884 F.2d 659
 12 U.S.P.Q.2d 1121, 16 Media L. Rep. 2224
 NEW ERA PUBLICATIONS INTERNATIONAL, APS, A Corporation of
Denmark, Plaintiff-Appellant-Cross-Appellee,
v.
HENRY HOLT, CO., A New York Corporation,
Defendant-Appellee-Cross-Appellant.
 Docket Nos. 88-7707, 88-7795.
 United States Court of Appeals,
Second Circuit.
 Aug. 29, 1989.
 
 1
 Prior Reports: 873 F.2d 576 (2d Cir.1989); 695 F.Supp. 1493 (S.D.N.Y.1988).ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING IN BANC
 
 
 2
 A petition for rehearing containing a suggestion that the action be reheard in banc having been filed herein by counsel for defendant-appellee-cross-appellant, Henry Holt, Co.
 
 
 3
 Upon consideration by the panel that heard the appeal, it is,
 
 
 4
 ORDERED that said petition for rehearing is DENIED.
 
 
 5
 It is further noted that a request for an in banc vote having been made by a judge of the court, and a poll of the judges in regular active service having been taken and there being no majority in favor thereof, rehearing in banc is DENIED.
 
 
 6
 MINER, Circuit Judge, concurs in a separate opinion, and MESKILL, PIERCE and ALTIMARI, Circuit Judges, join.
 
 
 7
 JON O. NEWMAN, Circuit Judge, dissents in a separate opinion from the denial of the rehearing in banc, and OAKES, Chief Judge, KEARSE and WINTER, Circuit Judges, join.
 
 
 8
 MINER, Circuit Judge, with whom MESKILL, PIERCE and ALTIMARI, Circuit Judges, join, concurring in the denial of rehearing in banc:
 
 
 9
 I of course concur in the Court's decision to reject the unprecedented proposal for in banc hearing suggested by a prevailing party dissatisfied with certain nondispositive language in the panel majority opinion. I write only to comment on the "expression of views" by which the in banc minority seeks "to allay ... misunderstanding" purportedly created by the panel majority in regard to the limits of permissible fair use and to establish what it perceives to be the proper standards. My comment may be summarized as follows: First, the panel majority opinion is consistent with settled law and leaves no room for misunderstanding. Second, a dissent from a denial of rehearing in banc lacks the authority to dispel misunderstanding in any event. Third, whether or not "this Circuit is committed to the language of the panel opinion," it surely is not committed to the language of the appended dissenting opinion.
 
 
 10
 Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), reversing 723 F.2d 195 (2d Cir.1983), teaches that unpublished, copyrighted material very rarely will be the subject of fair use. It recognizes that the right not to publish is a most important one and that "[t]he right of first publication encompasses not only the choice whether to publish at all, but also the choices of when, where, and in what form first to publish a work." Id. at 564, 105 S.Ct. at 2232. The case at bar did not present one of those rare situations where fair use might be found. The District Judge determined that a "more than negligible" amount of purloined, unpublished and copyrighted material was lifted and that the "amount and substantiality" fair use factor, 17 U.S.C. Sec. 107(3), therefore favored the plaintiff. The panel majority agreed. The District Judge also found that the first fair use factor, purpose of the use, id. Sec. 107(1), favored the defendant and that the second fair use factor, nature of the copyrighted work, id. Sec. 107(2), favored the plaintiff, and the panel majority agreed with these findings as well. Only with respect to the fourth factor, effect of the use upon the potential market, id. Sec. 107(4), did the panel majority disagree with the District Judge, who found that this factor favored the defendant. The disagreement made no difference, however, because the District Court found that Holt & Co. had failed the fair use test.
 
 
 11
 The dissenting opinion would make a "distinction between copying expression to enliven the copier's prose and doing so where necessary to report a fact accurately and fairly," apparently for the purpose of affording special consideration to material used for factual reportage. It observes that the distinction "has never been rejected even as to unpublished writings." Of course, the distinction never has been recognized as an element in the fair use balance either, and the dissenting opinion therefore seems to parse the first fair use factor, purpose of the use, without good reason. What the panel majority opinion says, consonant with settled law, is that in applying the first factor the distinction has no importance. See Salinger v. Random House, Inc., 811 F.2d 90, 97 (2d Cir.) ("we agree with the District Court that the first fair use factor weighs in [the biographer's] favor, but not that the purpose of his use entitles him to any special consideration"), reh'g denied, 818 F.2d 252 (2d Cir.) (per curiam), cert. denied, 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987). In the case at bar, as in Salinger, the first factor was found to weigh in favor of the publisher because the book was a work of criticism, scholarship or research. If a book falls into one of these categories, assessment of the first fair use factor should be at an end. Moreover, I question whether judges, rather than literary critics, should decide whether literary material is used to enliven a text or demonstrate truth. It is far too easy for one author to use another's work on the pretext that it is copied for the latter purpose rather than the former.
 
 
 12
 It is heartening to note that the dissenters "are confident that [the panel majority] has not committed the Circuit to the proposition that the copying of some small amounts of unpublished expression to report facts accurately and fairly can never be fair use." This confidence is not misplaced, of course, because there is nothing in the panel majority opinion that suggests otherwise! Indeed, the panel majority does not even bar the use of "small amounts of unpublished expression" to enliven the text. A different finding on the "amount and substantiality" fair use factor in the case at bar well might have dictated the same outcome in the case were laches not available as a defense. But that outcome would not have hinged on the distinction between factual reportage and text enlivening. Instructive in this regard is Consumers Union of United States, Inc. v. General Signal Corp., 724 F.2d 1044 (2d Cir.1983), reh'g in banc denied, 730 F.2d 47 (2d Cir.), cert. denied, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984), cited in the dissenting opinion. The defendants in that case were found to have made "relatively insubstantial use" of published material in using in its advertising an evaluation of its product taken from the well-known Consumer Reports publication. Id. at 1050. Only one phrase was taken for one advertisement; twenty-nine words were taken for another. The key to that decision was not the need for copying in the interest of accuracy but the insubstantiality of the use. Moreover, in light of the reversal by the Supreme Court of our Harper and Row decision, the following in Consumers Union turned out to be an incorrect statement of the law: "Implicit in that decision [our Harper & Row ] is an acknowledgment that, where accurate reporting requires use of verbatim quotations, fair use will be liberally applied. The scope of the doctrine is undoubtedly wider when the information conveyed relates to matters of high public concern." 724 F.2d at 1050 (emphasis added). It now can be said that fair use is never to be liberally applied to unpublished copyrighted material, even if the work is a matter of such high public concern as the memoirs of President Ford.
 
 
 13
 As to the remedy that would have been granted in the absence of laches, the panel majority opinion, as noted in the dissenting opinion here, precisely tracks the infelicitous language of Salinger: An infringer who "copies more than minimal amounts of (unpublished) expressive content ... deserves to be enjoined." 811 F.2d at 96. All now agree that injunction is not the automatic consequence of infringement and that equitable considerations always are germane to the determination of whether an injunction is appropriate. Indeed, the discretionary nature of injunction as a remedy for copyright infringement is apparent in the pertinent statutory provision:
 
 
 14
 Any court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.
 
 
 15
 17 U.S.C. Sec. 502(a) (emphasis added). The panel majority maintains its view that an injunction would have been a proper remedy in this case except for the controlling issue of laches, but has proposed to amend its opinion at 873 F.2d 576, 584, col. 1, line 4 (2nd Cir.1989) to read as follows: "Since [under ordinary circumstances] the copying of 'more than minimal amounts' of unpublished expressive material calls for an injunction barring the unauthorized use, id. at 96, the consequence of the district court's findings seem obvious." (bracketed material added to original).
 
 
 16
 JON O. NEWMAN, Circuit Judge, with whom OAKES, Chief Judge, KEARSE and WINTER, Circuit Judges, join, dissenting from denial of rehearing in banc:
 
 
 17
 This is an unusual case to request rehearing in banc, and we believe it is important to explain why we believe such rehearing is warranted. Our reasons concern the need to avoid misunderstanding on the part of authors and publishers as to the copyright law of this Circuit--misunderstanding that risks deterring them from entirely lawful writings in the fields of scholarly research, biography, and journalism. We would have preferred an in banc rehearing to avoid such misunderstanding. Though rehearing is favored by five of the twelve active judges of this Court, it has not gained the support of the required majority and has therefore been denied. The denial of rehearing, however, does not mean that this Circuit is committed to the language of the panel opinion that has created the risk of misunderstanding, and by this expression of views we hope to allay such misunderstanding.
 
 
 18
 At the outset, we emphasize what the careful reader of the panel opinion will readily appreciate: The holding of the panel opinion is only that in the circumstances of this case, the doctrine of laches bars the issuance of a preliminary injunction. Had the panel majority confined its opinion to that unexceptional conclusion, there would have been no occasion even to consider a rehearing in banc. Normally, the appearance of language beyond the holding would also be no occasion for rehearing. In most contexts, the clarification and refinement of such language and the extent to which it will affect future holdings may safely await future litigation. But many authors and publishers are understandably reluctant to risk litigation. Many important works of authorship command a limited readership. The cost of defending a copyright infringement suit, even if the prospect of success is high, will frequently be a powerful deterrent to inclusion of passages that approach but do not exceed the limits of permissible fair use. Our unwillingness to see entirely lawful writings withheld from publication prompts this expression of views. We focus upon the standards both for infringement and for issuance of an injunction.
 
 
 19
 1. Copying expression to report facts accurately. The Supreme Court in Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), and this Court in Salinger v. Random House, Inc., 811 F.2d 90 (2d Cir.), cert. denied, 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987), ruled that unpublished writings "[u]nder ordinary circumstances," Harper, 471 U.S. at 555, 105 S.Ct. at 2228, are protected from copying sought to be justified as fair use. Neither decision, however, purported to deal with the problem that concerned the District Judge in this case. That problem is whether, even as to unpublished writings, the doctrine of fair use permits some modest copying of an author's expression in those limited circumstances where copying is necessary fairly and accurately to report a fact set forth in the author's writings.
 
 
 20
 Surveying the District Judge's opinion, the panel majority writes:
 
 
 21
 The district court sees a significant distinction in purpose between the use of an author's words to display the distinctiveness of his writing style and the use of an author's words to make a point about his character, finding far greater justification in the latter than in the former. We find such a distinction unnecessary and unwarranted in applying the statutory fair use purpose factor.
 
 
 22
 873 F.2d at 583. We are not sure precisely what the panel opinion means by this passage, but we are confident that it has not committed the Circuit to the proposition that the copying of some small amounts of unpublished expression to report facts accurately and fairly can never be fair use.
 
 
 23
 In the context of published material, this Court has held that copying a few words of expression is permissible fair use where such copying is "the only valid way precisely to report" a fact in the copyrighted work. Consumers Union v. General Signal Corp., 724 F.2d 1044, 1049 (2d Cir.1983), cert. denied, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). Expressive words sometimes need to be copied "in the interest of accuracy, not piracy." Id. Though New Era involves an unpublished work, as to which the scope of fair use is "narrower," Harper, 471 U.S. at 564, 105 S.Ct. at 2232, the distinction between copying expression to enliven the copier's prose and doing so where necessary to report a fact accurately and fairly has never been rejected even as to unpublished writings in any holding of the Supreme Court or of this Court. Indeed, in Harper the Supreme Court acknowledged the distinction in the context of an unpublished writing. Though the Court declined to permit the copying of unpublished expression simply because such expression could be deemed "newsworthy," 471 U.S. at 557, 105 S.Ct. at 2228, the Court recognized that some brief quotes might be "necessary adequately to convey the facts." Id. at 563, 105 S.Ct. at 2232. President Ford's characterization of White House tapes as the "smoking gun" was cited as an example of a phrase deemed "perhaps so integral to the idea expressed as to be inseparable from it." Id. Fair use was denied in Harper because "The Nation did not stop at isolated phrases" but instead made a use of protected expression that "exceeds that necessary to disseminate the facts." Id. at 563-64, 105 S.Ct. at 2232-33.
 
 
 24
 Perhaps the panel opinion in New Era meant only to say that the distinction as phrased by the District Judge was unwarranted or that the distinction was unwarranted in light of the amount of protected expression that was copied. Whatever was intended, we are satisfied that the distinction has validity, and, though we would have preferred to see the matter clarified in either the panel opinion or a rehearing of it, we do not believe that biographers and journalists need be apprehensive that this Circuit has ruled against their right to report facts contained in unpublished writings, even if some brief quotation of expressive content is necessary to report those facts accurately.
 
 
 25
 2. Injunction as a remedy for infringement. Language in the panel opinion can be read to suggest that once infringement has been found, the remedy of an injunction follows as of course, save only in situations where some affirmative defense, such as laches, is established. Again, we are not certain that the panel intended its language to be so understood, but surely such a conclusion does not follow from the holdings in Harper and Salinger, nor is it the law of this Circuit. Harper did not involve a request for an injunction; the plaintiff sought only damages. Salinger involved a preliminary injunction but not an injunction to halt distribution of a book already in publication; the injunction required the defendant only to revise galley proofs to delete infringing material prior to publication.[1]
 
 
 26
 The panel's holding demonstrates that its language is not to be understood as narrowing the equitable discretion as to the propriety of an injunction, which is conferred by statute, 17 U.S.C. Sec. 502 (1982). Laches is, of course, an equitable doctrine, and the panel's application of the laches doctrine demonstrates that equitable considerations, in this as in all fields of law, are pertinent to the appropriateness of injunctive relief. The public interest is always a relevant consideration for a court deciding whether to issue an injunction.
 
 
 27
 We do not believe that anything we have said in this opinion concerning fair use or injunctive relief is contrary to the views of a majority of the judges of this Court. Indeed, though there might be differences in phrasing, we think it likely that the members of the panel that decided this appeal will readily apply these principles as facts in future cases may warrant. Our preference to have these matters clarified now, in light of ambiguous language in the panel opinion that risks misunderstanding in the sensitive field of authorship, is what prompts us to issue this opinion in respectful dissent from the denial of rehearing in banc.
 
 
 
 [1]
 Since the writer of this opinion is responsible for one sentence in the Salinger opinion partially quoted by the panel opinion in support of the view favoring issuance of an injunction, some words of clarification about that sentence are appropriate. The sentence reads, "If [the biographer] copies more than minimal amounts of (unpublished) expression, he deserves to be enjoined...." Salinger, 811 F.2d at 96. The panel majority writes, "Since [under ordinary circumstances] the copying of 'more than minimal amounts' of unpublished expressive material calls for an injunction barring the unauthorized use, [Salinger ] at 96, the consequences of the district court's findings seem obvious." New Era, 873 F.2d at 584 (bracketed words are proposed to be added by the panel majority to its opinion). The partially quoted sentence from Salinger was concerned with the issue of infringement, not the choice of remedy. Indeed, there was no dispute as to remedy in that case at all once infringement was found, since the infringing work had not been published and the injunction sought and issued in that case required only some deletions from galley proofs. It would have been preferable to have said in Salinger "... he deserves to be found liable for infringement."