RICHARD FEINER & CO., INC., Plaintiff,

v.

H.R. INDUSTRIES, INC., Defendant.

No. 97 Civ. 4670(RO).

United States District Court, S.D. New York.

June 3, 1998.

Opinion and Order Adhered to on Reconsideration Sept. 16, 1998.

---

Gregory A. Sioris, Deidre O'Brien, for plaintiff.

Squadron, Ellenoff, Plesent & Sheinfield, LLP, by Slade R. Metcalf, Jean Voutsinas, for defendant.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiff Richard Feiner & Co., Inc.'s complaint, asserting copyright, trademark and certain state law claims, has been answered by defendant H.R.I. Industries, Inc. Co.'s motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, with an alternative summary judgment motion under Fed.R.Civ.P. 56.[1] Feiner has cross moved for, among other things, summary judgement, damages and an injunction on its substantive claims.[2]

Feiner is presently the sole copyright holder and licensor for several Laurel & Hardy photoplays, including for the Laurel & Hardy comedy short entitled "Liberty" (the "photoplay"), which was first created in 1929. Its present copyright derives from a judgment granted on May 7, 1991 by Judge Letts in

---

**1.** Jurisdiction thus lies under 28 U.S.C. §§ 1331, 1338(a), 1338(b).

**2.** Feiner has also moved to strike affidavit testimony under Fed R. Civ. P. 12(f) on the basis of Fed.R.Civ.P. 56(e), which requires that "[s]upporting and opposing affidavits ... be made on personal knowledge." *Id.; see also Randell v. United States*, 64 F.3d 101, 109 (2d Cir.1995) ("[U]nsupported assertions [are] inadequate to

defeat a motion for summary judgment."). HRI's affiant in this instance is Slade R. Metcalf, Esq., a member of the firm representing HRI in this action. The subject affidavit does not, however, make any assertions of fact; it merely summarizes Feiner's complaint, claims, and HRI's defenses. In any event, in light of the disposition of Feiner's substantive claims herein, the motion has been rendered moot.

the Central District of California (Docket No. CV 84–6291), which court-ordered copyright was registered on May 14, 1991. HRI is the publisher of the Hollywood Reporter, a daily and weekly trade magazine serving the television and motion picture industries. On March 12, 1997, HRI copied, colorized and placed a still photograph derived from the photoplay [3] on an interior cover page introducing a Special Effects & Stunts section in HRI's daily publication of Hollywood Reporter (the "section"). The photograph shows Laurel and Hardy perched at the edge of a tall building, with Hardy clinging to both Laurel and a leaning beam for what appears to be his own dear life. HRI did not seek license or consent from Feiner before reproducing and publishing the photograph.[4] Both parties agree that the photograph as acquired by HRI was initially used as a promotional still for the photoplay entitled "Laurel & Hardy's Laughing 20's", distributed by MGM,[5] although the photograph itself was owned and distributed by the National Screen Services Corp. on MGM's behalf. The photograph was bought by HRI from Marc Wanamaker, an employee of an archival agency called Bison Archives.[6]

As acquired by HRI, the photograph had on it a 1965 copyright notice and several legends at its bottom, one referencing the "Laughing 20s" MGM distribution, another an explicit copyright notice extending permission for newspaper and magazine reproduction.[7] Another legend states that the photograph is the property of National Screen Service and its use is limited to pro-

motion for exhibitions of the "Laughing 20's" photoplay, adding "Must be returned immediately thereafter."

In connection with HRI's use of the photograph in its magazine, the section's second page contains an "On the Cover" legend attributing the photograph to the "Liberty" comedy short without mention of Feiner, and includes as attribution for the photograph:

Photograph: Marc Wanamaker/Bison Archives

Color tinting on the cover by Marta Foust

Feiner's complaint states seven claims, involving (1) a copyright claim, with three other claims regarding various remedies available under the Copyright Act, 17 U.S.C. § 101, et seq., (2) a trademark claim under the Lanham Act, 25 U.S.C. § 1125(a), and (3) unfair competition claims under New York state law.[8] HRI, however, asserts as affirmative defenses that (1) because MGM abandoned the copyright for the photograph to the public domain, Feiner has no standing to bring suit; (2) as a magazine publisher, it made a valid permissive use of the photograph under the 1965 MGM copyright notice; or (3) to the extent its use of the photograph was an unauthorized use, it was di minimus, and constituted fair use under copyright law.

As to Feiner's motion for summary judgment, the Court's only task is to determine whether or not there are issues of material fact to be tried. See Meeropol v. Nizer, 417 F.Supp. 1201, 1207–1208 (S.D.N.Y.1976). In general, a plaintiff, in order to establish a

---

3. In its papers, HRI forgoes challenging the assertion that the photograph originally derived from the photoplay, and HRI explicitly conceded the point at oral argument. See Tr. (Oct. 23, 1997) at pp. 5, 9, and 19.

4. The sole licensee for the photoplay is Nostalgia Archive Ltd., of Yorba Linda, California, by Fast Forward Mktg. That license is for video cassettes only. HRI is not a sublicensee of Nostalgia.

5. On May 14, 1996, approximately ten months before HRI's use of the photograph, I preliminarily enjoined distribution of "Laughing 20's". I did not, however, convert the preliminary injunction into a permanent and final judgment until September 26, 1997, approximately 6 months after HRI's use.

6. Marc Wanamaker and Bison Archives are not licensees of Feiner.

7. The permissive language reads:

   "Copyright 1965, Metro–Goldwyn–Mayer, Inc. Permission granted for Newspaper and Magazine reproduction. Made in U.S.A."

8. Feiner elects statutory damages for willful infringement, and seeks attorney's fees and costs as allowed at 17 U.S.C. §§ 504(c)(1), 505. In addition, it seeks an injunction under 17 U.S.C. § 502(a) for all aspects of the photograph's use, as well as the underlying photoplay. Finally, it also seeks sequestration and impoundment of all infringing copies, material contributing thereto, and packaging, etc., as allowed under 17 U.S.C. § 503(a).

copyright claim, must demonstrate that it holds a valid copyright in the relevant work, and that the protected work was copied[9] by the defendant. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985). Here, Feiner's valid copyright in the photograph, as well HRI's copying, has been conceded. Thus, to deny plaintiff summary judgement, the burden derives upon HRI to competently put before the court sufficient facts, which if credited by the trier of fact, would place in issue defendant's contention that its use of the photograph was in some way privileged. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ HRI first contends that it had permission to copy the photograph because MGM's 1965 copyright notice granted wide license to magazine publishers. Yet, as observed by me in a previous opinion involving the same work, although MGM was the copyright licensee for the photoplays comprising the "Laughing 20's" as of 1965, MGM's successor, Turner Entertainment, lost those rights by a lapse in renewal as of June 8, 1993. *See Feiner & Co. v. Turner Entertainment Co., et al.,* 1997 WL 603447 (S.D.N.Y.) at *1 (Sept. 30, 1997). Thus, if Turner's rights had lapsed, MGM's permission granted thereunder has also lapsed. *See, e.g., Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 526 F.Supp. 1187, 1191 (S.D.N.Y.1981) (the scope of rights granted to and by a licensee are limited by the scope of the license). To HRI's contention that my conclusion in the *Turner* case is not dispositive here because my final judgement in the case (that Feiner, not Turner, held the copyright) did not issue until months after HRI's use of the photo, I observe that my holding in the *Turner* case merely involved the chronology of the emergence of Feiner's rights as established by the 1991 court order in the Central District of California.

■ HRI next contends that MGM abandoned its copyright in relation to the photograph for magazine and newspaper reproduction by its 1965 copyright notice, and that the photograph thereafter entered the public domain by its broad and extensive dissemination. As such, HRI continues, Feiner took its copyright interest subject to that abandonment and therefore Feiner's copyright does not embrace the photograph. In order to agree with HRI, I would first need to conclude that MGM clearly manifested its intent to abandon its 1965 copyright "through some affirmative act." *Hadady Corp. v. Dean Witter Reynolds,* 739 F.Supp. 1392, 1398 (C.D.Cal.1990). Next, I would need some basis for concluding that the photograph is now in the public domain. While various arguments have been presented in connection with MGM's likely intent,[10] no basis exists on this record for concluding that the photograph became part of the public domain as a result of MGM's notice. There has been nothing more than conclusory statements offered for the premise, either as to the extent of the photograph's dissemination or on what basis it may have been disseminated (that is, whether it was founded upon MGM's purported abandonment). Conclusory allegations cannot avoid summary judgement. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. HRI's abandonment defense is accordingly rejected.[11]

---

9. As a copyright owner, Feiner has the exclusive right to, among others things, reproduce, adapt, distribute and display the photograph. 17 U.S.C. § 106. As such, absent any other consideration, HRI's use and colorization of the photograph constitute an infringement of each of those rights.

10. HRI argued that the permissive language as to magazine publishers stood independent of that requiring the immediate return of the photograph to National Screen Services by theatre owners after promoting the exhibition of "Laughing 20s" at their theatres. Feiner countered that the two legends are interconnected, allowing release to magazines and newspapers by theatre owners in relation to such promotion, but requiring the photograph's immediate return thereafter. Any attempt to glean MGM's intent on my part, however, falls quickly into speculation.

11. I also note that it has been held that "[t]he law does not recognize a limited abandonment, such as an abandonment only in a particular medium, or only as regards a given mode of presentation," 4 Nimmer on Copyright, § 13.06. 13–274 (Rel.42–6/97 Pub. 465) (Matthew Bender & Co., Inc.) (citing *Metro–Goldwyn–Mayer, Inc. v. Showcase Atlanta Coop. Prods., Inc.,* 1981 Copyright L. Dec. (CCH) § 25,314 (N.D.Ga.1981)).

■ Finally, HRI asserts fair use and *de minimus* defenses. The Second Circuit has held that, while summary judgment in the face of a defendant's fair use defense is permissible, *Maxtone–Graham v. Burtchaell,* 803 F.2d 1253, 1259 (2d Cir.1986), it is an exceptionally strict test to grant or deny the fair use defense as a matter of law. *See Meeropol v. Nizer,* 560 F.2d 1061, 1071 (S.D.N.Y.1976).

HRI contends that it used the photograph in connection with "a newsworthy informational package" and thus its use can be properly construed as "news reporting", which receives greater protection under the defense. *See* 17 U.S.C. § 107, pmbl. This is frivolous.

As to fair use, the statutory factors to be weighed in making a fair use determination are:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. These factors are not meant to be exclusive, constituting an equitable rule of reason with each case being assessed on its own facts. *Association of Am. Med. Colleges v. Cuomo,* 928 F.2d 519, 524 (2d Cir.1991) (citing to *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 560, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)).

Turning to the first fair use factor, HRI asserts that the photograph was used to illustrate an informative article directed at a particular trade, that it consists of a single frame from the photoplay, and that HRI's use of the photograph was more likely to enhance the marketability of the photoplay than diminish it. In answer, Feiner stresses

the sale of advertising space within the section introduced by the photograph,[12] as well as "the going rate" for Feiner's licensing of other Laurel and Hardy images for advertising purposes.[13] Feiner also observes that by holding out the photograph to the world without attribution to Feiner, HRI has impacted Feiner's market by creating the impression that the photograph is now in the public domain. Given that HRI's use was directed at the film industry, the very market available to Feiner for exploitation of its rights, I agree with Feiner.

While protection is afforded to scholarly and critical uses of copyrighted works, *see New Era Publications Int'l ApS v. Carol Publ'g Group,* 904 F.2d 152, 156 (2d Cir.), *cert. den'd,* 498 U.S. 921, 111 S.Ct. 297, 112 L.Ed.2d 251 (1990) (quoting *New Era Publications, Int'l ApS v. Henry Holt Co.,* 884 F.2d 659 (2d Cir.1989)), and HRI likens its use to "criticism, comment ... scholarship [or] research". *See* 17 U.S.C. § 107; *Arica Inst., Inc. v. Palmer,* 970 F.2d 1067, 1077 (2d Cir.1992). HRI further asserts that the photograph was not used to entice readers to buy and thus did not serve the commercial nature of its publication. Although nothing on record speaks to whether the photograph enticed readers to buy the magazine, nothing before me suggests that it served a scholarly or critical purpose. While the photograph introduces a section of the magazine that contains some informational articles on the state of the special effects industry in Hollywood, it also is the section for special effects advertisers. HRI therefore has raised no issue as to the first fair use factor supporting its defense.

As to the nature of the photograph, courts look at whether the copyrighted work is "creative" as opposed to "factual" (or "mere diligence"), *Maxtone–Graham,* 803 F.2d at 1262 (citing *New York Times Co. v. Roxbury Data Interface, Inc.,* 434 F.Supp. 217, 221 (D.N.J.1977)), as well as to whether the work has been previously published. *See e.g. As-*

---

**12.** HRI's advertising rate card is on record to show that a full-page color ad in the Hollywood Reporter costs $6,900.00. Plaintiff's Ex. E.

**13.** Feiner provides examples of its usual licensing agreements for such photographs that evince Feiner's general licensing fee of $5,000 to 6,500 per photograph. *See* Plaintiff's Ex. G.

sociation of Am. Med. Colleges v. Cuomo, 928 F.2d 519, 524 (2d Cir.1991). If previously published, the work receives narrower protection under the fair use doctrine. See Arica Inst., Inc., 970 F.2d at 1078. HRI sidesteps the "creative/factual" assessment, stressing that, because of the duration of the underlying copyright as well as the blanket permission given to newspapers and magazines in MGM's 1965 notice, the photograph "was apparently widely circulated" prior to HRI's use in the spring of 1997. Again, nothing on record beyond bare assertion supports this contention. No instances of prior, unlicensed publications have been offered. There is no issue here, and this factor does not support HRI's defense.

The third factor requires an evaluation of "the volume and substantiality" of the use in proportion to the underlying work. Arica Inst., Inc., 970 F.2d at 1078 (quoting Wright v. Warner Books, Inc., 953 F.2d 731, 738 (2d Cir.1991)). There are "no absolute rules as to how much of a copyrighted work may be copied", but the evaluation should contain both a quantitative and qualitative assessment: I must consider whether HRI has appropriated the "heart" of Feiner's work. Maxtone–Graham, 803 F.2d at 1263 (citing Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 565, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). While HRI contends that its use was di minimus in comparison to the entire photoplay, it obviously comes from a "high" point in the movie, and an infringer may not "excuse the wrong" by pointing out the amount of the underlying work not copied. Sheldon v. Metro–Goldwyn Pictures Corp., 81 F.2d 49, 56 (2nd Cir.1936), cert. den., 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). In particular, I note the Second Circuit's recent observation in Ringgold v. Black Entertainment Television, Inc., such that

> courts considering the fair use defense in the context of visual works copied or displayed in other visual works must be care-

ful not to permit this factor too easily to tip the aggregate fair use assessment in favor of those whom the other three factors do not favor. Otherwise, a defendant who uses a creative work in a way that does not serve any of the purposes for which the fair use defense is normally invoked and that impairs the market for licensing the work will escape liability simply by claiming only a small infringement.

126 F.3d 70, 80–81 (2d Cir.N.Y.1997). Moreover, I accept Feiner's contention that the photograph is "key" because of the stature of the entertainers portrayed and because the photograph is identifiable to the photoplay.[14] There is no issue here.

Lastly, when determining the impact of a HRI's use upon the photograph's potential market or value, I must seek a balance between public benefit flowing from a fair use and the protective objectives of copyright law. See Wright, 953 F.2d at 739. Not only should the extent of harm flowing from HRI's use of the photograph be considered, but also whether, if HRI's behavior was widespread, Feiner's potential market for its copyright interest would be substantially and adversely impacted. Campbell v. Acuff–Rose Music, Inc., 510 U.S. 569, 590, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). Here, too, Feiner asserts that HRI's use of the photograph without attribution to Feiner represents to the world that the photograph is in public domain, thus potentially impairing Feiner's future revenue both in income and in the costs of protecting its rights. I accordingly find no issue but that this factor weighs in Feiner's favor. As such, because I reject all of HRI's arguments on the other factors as well, HRI cannot withstand Feiner's summary judgement motion by reliance on the fair use defense.

Accordingly, plaintiff having demonstrated that there are no issues of fact as to its claim

---

14. HRI seeks the opposite result by citation to Monster Communications, Inc. v. Turner Broad. Sys., Inc., 935 F.Supp. 490 (S.D.N.Y.1996). There, the Court found that the "amount and substantiality" factor favored the alleged infringer where the use of film clips, in the aggregate, represented 0.7 to 2.1 percent of the protected underlying film. See id. at 495. I distinguish those facts, however, from those here because the photograph provides a static image, impacting Feiner's copyright on a fixed basis that cannot be mitigated after its publication release. The same rationale prevents my finding that this is a de minimus use, not subject to sanction under copyright law.

and HRI establishing no factual issue in support of a defense, I therefore deny HRI's motions to dismiss in connection with Feiner's copyright claims, and grant Feiner's motion for summary judgment on the same. HRI is hereby enjoined from any future use of the photograph. Willfulness and damages, along with equitable relief to the extent required, to be determined hereafter, as well as costs and attorneys' fees.

I do, however, dismiss Feiner's claim under section 43(a) of the Lanham Trademark Act, 15 U.S.C. 1125(a),[15] as duplicative of its copyright claim. *See Lipton v. The Nature Co.,* 71 F.3d 464, 473 (2d Cir.1995); *Kregos v. Associated Press,* 937 F.2d 700, 711 (2d Cir.1991).

Feiner finally seeks (1) a finding that HRI's use constitutes unfair competition, and (2) an accounting of HRI's profits received in connection with any exploitation of the photograph, with such profits to be held in constructive trust for Feiner's benefit pending resolution. HRI contends, however, that each of Feiner's state law claims merely "repeat and reallege" those claims made under copyright law, and are thus preempted. I agree. Section 301 of the Copyright Act provides for preemption of all state claims that are tantamount to those falling within the scope and subject matter of copyright law. *See* 17 U.S.C. § 301. A state claim must be predicated upon "quantitatively different conduct" or there must be a "fundamental nonequivalence between the state and federal right implicated." *Business Trends Analysts, Inc. v. Freedonia Group, Inc.,* 700 F.Supp. 1213, 1235 (S.D.N.Y.1988), *aff'd in part and rev'd in part on other grounds,* 887 F.2d 399 (2d Cir.1989) (citing to *Harper & Row v. Nation Enterprises,* 723 F.2d 195, 201 (2nd Cir.1983)). It appears that Feiner's unfair competition claim is based upon a false

designation of ownership. Not only is the claim duplicative of the Lanham Act claim dismissed above, *see Kregos v. Associated Press,* 795 F.Supp. 1325, 1336 (S.D.N.Y. 1992), it is also preempted under § 301 of the Copyright Act. *See id.* at 1336–37. Accordingly, both Feiner's state law claims are dismissed.

Submit order accordingly.

---

**15.** Under that section
    (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities.

       *    *    *

shall be liable in civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. 1125(a)(1)(A).