**Christopher G. WEBER, d/b/a Hollywood Rose Music, Plaintiff,**

v.

**GEFFEN RECORDS, INC.; Guns N' Roses Music; Guns N' Roses, Inc.; W. Axl Rose; Michael "Duff" McKagan; and Jeffrey Isbell p/k/a Izzy Stradlin, Defendants.**

**No. 98 Civ. 0311(CBM).**

United States District Court, S.D. New York.

Sept. 9, 1999.

Toptani Law Offices, by Gabriel J. Fischbarg, for plaintiff.

Paul, Hastings, Janofsky & Walker, by Sandra Crawshaw; Jenifer Paine, for defendant Geffen Records.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., by James C. Dugan; Edward Spiro, for defendants Guns N' Roses Music, Guns N' Roses, Inc., W. Axl Rose, Michael "Duff" McKagan, and Jeffrey Isbell p/k/a Izzy Stradlin.

## OPINION

MOTLEY, District Judge.

Plaintiff Christopher G. Weber claims that his former bandmates, after joining the music group "Guns N' Roses," wrongly excluded him from the proceeds of two musical compositions he had co-written with them years earlier. Plaintiff presses a federal Lanham Act cause of action and state law causes of action for an accounting of profits, unjust enrichment, and unfair competition. Defendants have moved to dismiss. For the reasons given below, defendants' motions to dismiss are granted in their entirety and this action is dismissed.

### I. Background

#### A. History of the Disputed Musical Compositions

Mr. Weber alleges that in 1983 he co-authored two original musical compositions: "Back Off Bitch" ("First Composition"), co-authored by Mr. Weber and defendant W. Axl Rose; and "Shadow of Your Love" ("Second Composition"), co-authored by Mr. Weber, Mr. Rose, and

defendant Jeffrey Isbell p/k/a "Izzy Stradlin." Compl. ¶¶ 11–12.[1] At the time, Mr. Weber, Mr. Rose, and Mr. Isbell composed and performed music together as the music group "Hollywood Rose." Spiro Aff., Ex. C, ¶ 3 (October 19, 1989 complaint ("1989 Complaint") by Mr. Weber in prior federal lawsuit ("1989 Action")).

By the mid–1980s, Mr. Weber had parted ways with Mr. Rose and Mr. Isbell. In 1986, along with defendant Michael "Duff" McKagan, non-party Saul "Slash" Hudson, and non-party Steven Adler—but without Mr. Weber—Mr. Rose and Mr. Isbell formed the music group "Guns N' Roses" ("GNR"). Spiro Aff., Ex. C, ¶ 7 (1989 Complaint). In its heyday during the late 1980s and early 1990s, GNR enjoyed worldwide commercial success, with performances and sales of albums, packaged box sets, videocassettes, sheet music, etc., in the United States, Europe, Japan, and Australia. Compl. ¶¶ 15–33.

During this period, Mr. Weber alleges, GNR used the two Compositions in multiple GNR recordings without giving Mr. Weber co-authorship attribution. Beginning in September 1991, a song entitled "Back Off Bitch" ("First Song") appeared on various GNR recordings, including an album entitled "Use Your Illusion I" that was distributed throughout the United States and worldwide. Compl. ¶¶ 15–25. Mr. Weber did not learn of the First Song until March 1992, he claims, when he saw the First Song on "Use Your Illusion I" in a record store. Compl. ¶ 34; Weber Decl. ¶ 3. Beginning in June 1987, a song entitled "Shadow of Your Love" ("Second Song") appeared on various GNR recordings distributed outside the United States. Compl. ¶¶ 28–34. Mr. Weber did not learn of the Second Song until January 1997 because of its exclusively foreign distribution, he claims. Compl. ¶ 34. Each of the two Songs allegedly "contains a large portion of the ... Composition" of the same name. Compl. ¶¶ 16, 31.

---

1. Unless otherwise noted, "Compl." refers to plaintiff's First Amended Complaint.

**B. Mr. Weber's Pursuit of Co–Authorship Rights**

While GNR never paid Mr. Weber for its alleged use of the Compositions, it did not expressly refuse to pay until December 1997, Mr. Weber claims. Compl. ¶¶ 35–36; Weber Decl. ¶¶ 5, 10; Ehrlich Decl. ¶ 11. Upon learning of the First Song, Mr. Weber "did not immediately seek legal intervention and instead waited for such accounting and for the correction of the misattribution of [his] work in that Composition which was given to others." Weber Decl. ¶ 3. Mr. Weber expected recognition and an accounting from GNR because he thought that, based on the then-settled 1989 Action he had filed against GNR for other co-authorship claims, GNR "knew to account to [him] for [his] co-authorship." Weber Decl. ¶ 3; Spiro Aff. ¶ 4.

Eventually, hearing nothing from GNR regarding the First Composition, Mr. Weber had an agent attempt negotiations with GNR from fall 1994 to December 1997. Weber Decl. ¶ 4; Ehrlich Decl. ¶ 2. During the negotiation efforts, Mr. Weber's agent reports that he received from GNR "continual promises that plaintiff would be paid some amount to be negotiated for his contribution to the Composition 'Back Off Bitch' and that the misattribution of authorship would be corrected." Ehrlich Decl. ¶ 2; Weber Decl. ¶ 4. Published books of GNR sheet music during this period did list Mr. Weber as a co-author, strengthening his belief in GNR's promises to recognize his co-authorship rights. Weber Decl. ¶ 5; Ehrlich Decl. ¶¶ 2, 4–8.

Upon learning of the Second Song in January 1997, Mr. Weber's agent broadened his negotiation efforts to include recognition and an accounting from GNR for the Second Composition. During that phase of negotiations, GNR's purported promises to pay Mr. Weber and to recognize his co-authorship extended identically to both the First and Second Composi-

tions. Weber Decl. ¶¶ 8–9; Ehrlich Decl. ¶¶ 9–10.

**C. Copyright Registrations**

Mr. Weber claims that "[a]t all times, [he] has been co-owner of all right, title and interest, including, but not limited to, all rights of copyright, pertaining to the Compositions." Compl. ¶ 13. Mr. Weber did not apply for registration of the Compositions with the United States Copyright Office, however, until he filed the complaint in this action. Compl. ¶ 14.

The First and Second Songs are copyrighted as the creations and the property of various GNR members. The First Song was registered on December 16, 1991, initially listing Mr. Rose, Mr. Hudson, and non-party Paul Huge as the sole authors, but amended on August 8, 1994 to add Mr. McKagan and Mr. Stradlin as co-authors. Spiro Aff. ¶ 7, Ex. E. The Second Song was registered on August 7, 1987, listing Mr. Rose, Mr. Hudson, Mr. Adler as the sole authors. Spiro Aff. ¶ 5, Ex. D. Mr. Weber asserts that he did not know of the GNR copyright registrations for either the First or Second Song until after this litigation ensued. Weber Decl. ¶¶ 6, 11. In the 1989 Action, Mr. Weber made similar claims to co-authorship rights for three different songs. The GNR members' copyright to one of those songs, "Reckless Life," was registered on the same August 7, 1987 copyright registration statement as the Second Song in this action, "Shadow of Your Love." Spiro Aff. ¶¶ 5–6, Ex. D.

**II. Discussion**

Since amending his complaint, plaintiff does not press a formal Copyright Act cause of action, but does press the following four: accounting of profits under state law; false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); unfair competition under state law; and unjust enrichment under state law. All four causes of action, however, are premised on plaintiff's claim to co-ownership of defendants' copyrighted musical compositions.

*See, e.g.,* Compl. ¶ 38 (alleging, in accounting claim, that "At all times, plaintiff has been a co-owner of all rights and privileges in and to the copyright of the Compositions."). The Copyright Act limits plaintiff's present claims in three ways. First, it preempts any state law claim that would be too similar to a copyright claim. Second, it prevents any Lanham Act claim that would be too similar to a copyright claim. Third, it imposes a time bar on any claim premised on what would be a time-barred challenge to a copyright.

### A. Preemption of State Law Claims Based on Copyrights

"Congress carefully designed the statutory framework of federal copyright preemption ... to insure that the enforcement of these rights remains solely within the federal domain." *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992). The Copyright Act expressly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship," 17 U.S.C. § 301(a), with the proviso that "[n]othing in this title annuls or limits any rights or remedies under ... State [law] with respect to ... activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106," 17 U.S.C. § 301(b)(3). The referenced "scope of copyright," 17 U.S.C. § 106, "affords a copyright owner the exclusive right to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the work publicly; and (5) display the work publicly." *Computer Assocs. Int'l,* 982 F.2d at 716.

■ Whether a state law claim is preempted depends on whether it is derivative of a copyright claim or is based on an "extra element" beyond those of a copyright claim.

A state cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law.... A state law claim is not preempted if the "extra element" changes the "nature of the action so that it is qualitatively different from a copyright infringement claim."

*Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993) ("*Kregos* (1993)") (quoting *Computer Assocs. Int'l,* 982 F.2d at 716) (other citations omitted). Each of plaintiff's three state law claims not only is based on a copyright claim, but also lacks any extra element making it sufficiently different from a copyright claim to escape preemption.

"Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are generally preempted." *Netzer v. Continuity Graphic Assocs., Inc.,* 963 F.Supp. 1308, 1322 (S.D.N.Y.1997). *Netzer* held that the claims of unjust enrichment and for an accounting of profits were preempted in an action based on allegations that the plaintiff created Ms. Mystic, a comic book character that the defendants copyrighted and exploited.

Here, the gravamen of the unjust enrichment claim is unauthorized exploitation of Ms. Mystic without providing an accounting. Any "enrichment" of the Defendants as a result of the exploitation of Ms. Mystic is "unjust" only by virtue of Netzer's co-authorship interest under federal Copyright law, under which he is entitled to an accounting, precisely the remedy he seeks in this claim. Thus, Netzer's unjust enrichment ... claims seek vindication for the violation of essentially identical rights

and are therefore preempted by Federal Copyright law.

*Id.*

The rationale for preemption in *Netzer* also applies here, and not only to the unjust enrichment claim. Regardless of the title of each cause of action, plaintiff's basic claim is that because he is a co-author of the copyrighted material and a co-owner of the copyrights, defendants' copyrights should not entitle them to the full bundle of privileges that attach to copyright ownership. It is only through this basic claim that any enrichment is unjust, that any competition is unfair, or that anyone profiting must account to plaintiff. Accordingly, the Copyright Act preempts plaintiff's three state law claims: accounting, unfair competition, and unjust enrichment. *See, e.g., Kregos* (1993), 3 F.3d at 666 (unfair competition claims); *Richard Feiner & Co. v. H.R. Indus., Inc.,* 10 F.Supp.2d 310, 316 (S.D.N.Y.1998) (accounting and unfair competition claims); *Netzer,* 963 F.Supp. at 1322 (unjust enrichment claims); *Douglas v. Kimberly–Clark Corp.,* No. Civ.A. 96–2428, 1997 WL 180315, at *3 (E.D.Pa. Apr.11, 1997) (unfair competition claims); *Arden v. Columbia Pictures Indus., Inc.,* 908 F.Supp. 1248, 1264 (S.D.N.Y.1995) (accounting, unfair competition, and unjust enrichment claims).

### B. Applicability of Lanham Act to Copyright Claims

■ Section 43 of the Lanham Act, 15 U.S.C. § 1125, "prohibits any misrepresentation likely to cause confusion as to the source or the manufacturer of a product." *Lipton v. The Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995). In claiming that defendants falsely attributed authorship of the two Songs by excluding his name, plaintiff alleges "a practice termed 'reverse passing off' in which 'A' sells 'B's' product under 'A's' name." *Waldman Publ'g Corp. v. Landoll, Inc.,* 43 F.3d 775, 780 (2d Cir. 1994). The elements of a reverse passing off claim are: "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Lipton,* 71 F.3d at 472. Although a "typical reverse passing off case involves a manufactured product rather than a written work[,] ... [i]n the context of written works, the Lanham Act may be used to prevent 'the misappropriation of credit properly belonging to the original creator.'" *Waldman Publ'g Corp.,* 43 F.3d at 780–81 (quoting *Restatement (Third) of Unfair Competition* § 5, cmt. (c)).

Aware that nearly every copyright-based claim involves a charge of improper failure to credit a purported author, the Second Circuit has limited the extent to which a copyright-based claim may support a Lanham Act claim, repeatedly cautioning that "'we reject ... attempt[s] to convert all copyright claims into Lanham Act violations.'" *Lipton,* 71 F.3d at 473 (quoting *Kregos v. Associated Press,* 937 F.2d 700, 711 (2d Cir.1991) ("*Kregos* (1991)")). *Lipton* held that "as a matter of law, a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act." 71 F.3d at 473. This holds even where a plaintiff is successful on the copyright claim. *See Kregos* (1991), 937 F.2d at 710–11.

■ For the Lanham Act to apply to a copyright-based claim, an aggrieved author must show more than a violation of the author's copyright-protected right to credit and profit from a creation. The author must make a greater showing that the designation of origin was false, was harmful, and stemmed from "some affirmative act whereby [defendant] falsely represented itself as the owner." *Lipton,* 71 F.3d at 473–474 (quoting *Cognotec Servs., Ltd. v. Morgan Guar. Trust Co.,* 862 F.Supp. 45, 51 (S.D.N.Y.1994)). *Compare, e.g., Cognotec Servs., Ltd.,* 862 F.Supp. at 51 (finding no § 43(a) liability based on copyright infringement alone),

with *Eden Toys v. Florelee Undergarment Co.*, 697 F.2d 27, 37 (2d Cir.1982) (finding § 43(a) liability where copyright notice not only was false but also asserted that product was "original"). This rule is analogous to the preemption rule that a state law claim requires an "extra element," beyond those tracing to any copyright, that "changes the 'nature of the action so that it is qualitatively different from a copyright infringement claim,' " *Kregos* (1993), 3 F.3d at 666 (quoting *Computer Assocs. Int'l*, 982 F.2d at 716).

■ Just as plaintiff's state claims are preempted for their lack of any such "extra element," plaintiff's Lanham Act claim is impermissible because it would essentially duplicate a Copyright Act claim. Plaintiff's allegations are those of a standard copyright violation. As support for a Lanham Act claim, they do not show the requisite affirmative action of falsely claiming originality beyond that implicit in any allegedly false copyright. Any copyright falsity here, compared to a garden-variety copyright violation, was not an especially egregious false claim of originality; plaintiff alleges only co-ownership, not sole ownership, and only partial use of his co-authored Compositions in defendants' Songs. Accordingly, the complaint's Lanham Act claim must be dismissed "as duplicative of its copyright claim," *Richard Feiner & Co. v. H.R. Indus., Inc.*, 10 F.Supp.2d 310, 316 (S.D.N.Y.1998), which underlies all four causes of action despite plaintiff's choice to omit any explicit Copyright Act cause of action from his complaint.

### C. Statutes of Limitations

■ No cause of action, whether or not brought under the Copyright Act, may be premised on a time-barred challenge to a copyright. *Margo v. Weiss*, No. 96 Civ. 3842(MBM), 1998 WL 2558, at *9 (S.D.N.Y. Jan.5, 1998), so held in rejecting various non-copyright claims.

[P]laintiffs' claims for breach of fiduciary duty are based on the assumption that the parties have been deemed co-authors. However, plaintiffs' claim of co-authorship is barred under federal law.... [T]he only duty that exists between co-authors is the duty to account for profits. However, the duty to account for profits presupposes a relationship as co-owners of the copyright, a relationship plaintiffs are time-barred from asserting.

1998 WL 2558, at *9. This court agrees that "[i]t would be anomalous to hold that plaintiffs are precluded from seeking a declaration of co-authorship and, at the same time, that they are permitted to claim a breach of the duties that co-authorship might impose." Accordingly, plaintiff cannot state a claim with any non-copyright cause of action that depends on a copyright claim that would be time-barred under the Copyright Act.

■ Civil actions under the Copyright Act face a three-year statute of limitations. 17 U.S.C. § 507(b). Because "[a] cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised[,] ... plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir.1996). As in all statute of limitations inquiries, accrual will be later than the date of violation only to the extent that plaintiff exercised reasonable diligence but remained unaware of the violation. *See Netzer*, 963 F.Supp. at 1315; *Margo*, 1998 WL 2558, at *5.

### 1. Awareness of Second Composition Violations

■ Plaintiff claims that he learned of the Second Song, "Shadow of Your Love," which allegedly infringes the Second Composition of the same name, only in January 1997, when his agent informed him of GNR's foreign use of the Second Song.

Compl. ¶ 34. The copyright registration statement for the Second Song was dated August 7, 1987 and listed Mr. Rose, Mr. Hudson, and Mr. Adler as the sole authors. Spiro Aff. ¶ 5, Ex. D. That document was central to plaintiff's 1989 Action alleging (as in this action) that GNR used and copyrighted, without crediting him, three other musical compositions he co-authored. Spiro Aff. ¶ 6, Ex. C. One song at issue in the 1989 Action, "Reckless Life," was registered on the same August 7, 1987 statement as the Second Song in this action, "Shadow of Your Love." Spiro Aff. ¶¶ 5–6, Ex. D.

This history gave plaintiff sufficient knowledge for a 1989 accrual date of his Second Song claims. As of 1989, plaintiff had actual knowledge of the following alleged facts: that two of his former Hollywood Rose bandmates had formed GNR; that GNR exploited a musical composition entitled "Reckless Life" that plaintiff and his former bandmates had co-authored; that GNR copyrighted "Reckless Life" without crediting him; and that GNR similarly exploited two other musical compositions. A reasonably diligent person in plaintiff's position would have looked at the August 7, 1987 copyright registration of "Reckless Life," whether to see the details of that Song's infringement (*e.g.,* who was credited as an author) or to see if his former bandmates, whom he believed to have infringed his rights to three compositions, had infringed his rights to any other songs. Plaintiff would have seen the allegedly improper registration of the Second Song, "Shadow of Your Love," in that August 7, 1987 copyright registration.

This court is not holding that awareness of some number of violations necessarily yields constructive knowledge of all other violations by the same parties. Rather, the holding is only that in 1989 plaintiff should have been aware of an infringement clearly stated on a public document integral to one of his then-existing infringement claims. Plaintiff therefore had at least constructive knowledge of the Second

Song's copyright in 1989. Absent a reason to toll the statute of limitations, and setting aside any reasons for an earlier accrual date, this 1989 accrual date bars any copyright claims, or any other claims featuring a three-year limitations period, regarding the Second Song as of 1992; any claims featuring a six-year limitations period would be barred as of 1995.

### 2. Awareness of First Composition Violations

Plaintiff admits that he learned of the First Song, "Back Off Bitch," which allegedly infringes the First Composition of the same name, in March 1992, when he saw the First Song on GNR's "Use Your Illusion I" album in a record store. Compl. ¶ 34; Weber Decl. ¶ 3. Absent a reason to toll the statute of limitations, and setting aside any reasons for an earlier accrual date, this actual knowledge of the alleged violation bars any copyright claims (or any other claims featuring a three-year limitations period) regarding the First Song as of March 1995.

An earlier accrual date is appropriate, however, because the exercise of reasonable diligence would have disclosed the First Song to plaintiff earlier. In September 1991, "Use Your Illusion I" entered wide retail distribution in the United States and abroad. Compl. ¶¶ 15–25. As of 1989, plaintiff already knew of three GNR infringements of his rights to co-authored musical compositions; if he had been reasonably diligent, in 1989 he also would have discovered a fourth infringement, the GNR exploitation of the Second Composition, "Shadow of Your Love." In the months surrounding the September 1991 release of "Use Your Illusion I," the 1989 Action remained ongoing. *See* Spiro Aff., Ex. G (stipulation of dismissal dated January 15, 1992).

Under these circumstances, a reasonably diligent plaintiff would have discovered the First Song, "Back Off Bitch," by late 1991. In 1989, plaintiff knew of three separate GNR song infringements on dif-

ferent GNR albums; he should have known of a fourth. In 1991, while plaintiff had multiple infringement claims ongoing against GNR, reasonable diligence would have disclosed the September 1991 public release of "Use Your Illusion I," the GNR album containing the First Song. A reasonably diligent person would not wait six months, as plaintiff did, to take even a cursory look at the new, widely released album from a musical group that very recently had repeatedly infringed his musical compositions.

Accordingly, September 1991 is an appropriate accrual date for plaintiff's claims regarding the First Song because plaintiff had constructive knowledge of the First Song at that time. Even if a later accrual date were appropriate on the rationale that plaintiff was entitled to a short grace period from the September 1991 album release date, any later accrual date still would be in 1991 because any grace period would not last for the more than three months necessary to bring the accrual date into 1992. A late 1991 accrual date bars any copyright claims, or any other claims featuring a three-year limitations period, regarding the First Song as of 1994; any claims featuring a six-year limitations period would be barred as of 1997.

### 3. Equitable Tolling or Estoppel Based on Defendants' False Representations

Plaintiff argues for extension of the limitations periods by claiming that defendants' actions caused his delay in filing this action. Plaintiff alleges that defendants continually promised to remedy their infringements. Based on those promises, plaintiff asserts, the two sides engaged in protracted negotiations to resolve the dispute and to implement defendants' promises. This may be an argument for either equitable tolling or equitable estoppel.

"Under the equitable tolling doctrine ... a statute of limitations does not run against a plaintiff who was justifiably ignorant of his cause of action." *Netzer*, 963 F.Supp. at 1316 (citing *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir.1986)). Because "[a] plaintiff who unreasonably relies on the reassurances of a wrongdoer has not satisfied th[e] obligation of due diligence," *Netzer*, 963 F.Supp. at 1316, a defendant's false promises to compensate a plaintiff for delaying suit are insufficient to support equitable tolling of that plaintiff's claims. *See Kregos* (1993), 3 F.3d at 661 (rejecting equitable tolling despite allegation of defendant's "false representation that it would send more work to Kregos if he delayed suit" where district court found that "Kregos's continued reliance on these empty promises was unreasonable and without justification"). More fundamentally, any defendant misdeeds left plaintiff not unaware of his claims, but deceived into delaying those claims. Plaintiff's "persistent objections" to alleged violations show his awareness of those violations at the time. *See Fort Knox Music, Inc. v. Baptiste*, 47 F.Supp.2d 481, 483 (S.D.N.Y.1999) (holding claim to authorship of composition time-barred because "it is clear that Baptiste knew of his claimed injury more than three years prior" from "his persistent objections" to the crediting of his work to others).

■ With plaintiff's awareness of any violations clear, equitable estoppel is the more applicable equitable doctrine.

Equitable estoppel may toll a statute of limitations where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused him to delay in bringing suit.... Ordinarily the doctrine applies where, although the plaintiff is aware of his cause of action, his delay is excused because either the defendant misrepresented the length of the limitations period or "lulled the plaintiff into believing it was not necessary to commence the litigation."

*Netzer*, 963 F.Supp. at 1316 (quoting *Cerbone v. ILGWU*, 768 F.2d 45, 50 (2d Cir. 1985)) (citing *Buttry v. Gen. Signal Corp.*,

68 F.3d 1488, 1493 (2d Cir.1995)). The doctrine is exceptional, "applicable only in situations where demonstrated 'egregious wrongdoing' by a defendant prevents a plaintiff from bringing suit on a claim of which the plaintiff is aware." *Netzer*, 963 F.Supp. at 1316 (citation omitted). An entirely unexceptional string of empty promises, defendants' alleged deceptions would not have deterred a reasonably diligent plaintiff. Just as they do not meet the standards of equitable tolling, they all the more clearly do not meet the more restrictive standards of equitable estoppel because "due diligence is not satisfied by passive reliance upon an allegedly deceptive statement." *Margo*, 1998 WL 2558, at *5 (rejecting equitable estoppel because "plaintiffs have failed to demonstrate that they exercised reasonable diligence[, having] ... passively relied on [defendant's] statement"); *see also Netzer*, 963 F.Supp. at 1316 (rejecting both equitable tolling and equitable estoppel).

### 4. Limitations Periods for Plaintiff's Claims

The accrual date of any claims based on GNR's exploitation of either song was more than six years before the January 16, 1998 filing of this action. Any copyright claims therefore would be time-barred based on the three-year Copyright Act statute of limitations. This precludes all four of plaintiff's causes of action because each rests on the premise that plaintiff has a valid claim to the copyrights and the copyrighted materials. Even if the four causes of action did not depend on copyright claims, each is independently time-barred by plaintiff's delay of more than six years from accrual, which is longer than any six-year limitations periods that might be applicable under New York law, *see, e.g., Netzer*, 963 F.Supp. at 1323 (six-year limitations period for Lanham Act claims), were it not for the dispositive effect of the three-year Copyright Act limitations period. Accordingly, all four of plaintiff's causes of action are time-barred with respect to each of the two Compositions.

### III. Conclusion

For the reasons given above, defendants' motions to dismiss are granted in their entirety and this action is dismissed.