**CAMBRIDGE LITERARY
PROPERTIES, LTD.,
Plaintiff,**

v.

**W. GOEBEL PORZELLANFABRIK
G.M.B.H. & CO. KG. and Goebel
Art G.m.b.H., Defendants.**

**Civil Action No. 00–10343–NG.**

United States District Court,
D. Massachusetts.

Aug. 8, 2006.

Henry Herrmann, Boston, MA, for Plaintiff.

David P. Shouvlin, Porter, Wright, Morris & Arthur LLP, Columbus, OH, Dr. Jur. Horst Von Der Osten, Kaiser–Friedrich–Ring, Deusseldorf, Germany, Joseph D. Steinfield, David E. Plotkin, Prince, Lobel Glovsky & Tye LLP, Boston, MA, for Defendants.

GERTNER, District Judge.

Electronic ORDER entered granting 106 Motion for Summary Judgment, adopting Report and Recommendations re 146: After carefully reviewing Magistrate Judge Dein's lengthy Report and Recommendation in connection with Defendant's Motion for Summary Judgment, and the voluminous objections and responses filed by each side, I adopt the Report and Recommendation without change. First, I reject the plaintiff's objections to that portion of the Magistrate's decision that addresses the statute of limitations issues. I entirely agree that Cambridge's claims are barred by the Copyright Act's three year statute of limitation, that, even assuming Cambridge had asserted a state law cause of action, these claims would still be time-barred. I also agree that there is no basis on the record to conclude that the limitations period is tolled (under the doctrine of equitable tolling). Second, I also reject defendant's objections to that portion of the Magistrate's decision that deals with issue preclusion, which would have provided an alternative basis for the dismissal of this action. I agree with Magistrate Judge Dein that there are issues of fact with respect to issue preclusion on this record. Nevertheless, based on the limitations finding, I conclude that summary judgment for the defendant be GRANTED on the grounds that plaintiff's claims are untimely.

## REPORT AND RECOMMENDATION ON *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

DEIN, United States Magistrate Judge.

### I. *INTRODUCTION*

The plaintiff, Cambridge Literary Properties, Ltd. ("Cambridge"), has brought this action against the defendants, W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg. and Goebel Art G.m.b.H. (collectively, "Goebel"), seeking a share of the defendants' profits resulting from their use of images allegedly taken from a book in which Cambridge claims to have a copyright interest. By its Amended Complaint, Cambridge claims that it is the co-

owner of the United States Renewal Copyright ("Renewal Copyright") in the book "Das Hummelbuch," and, as such, is entitled to an accounting and imposition of a constructive trust to recover its alleged share of the profits that Goebel has realized and will continue to realize from, among other things, the distribution and sale of figurines and products allegedly derived from the book, its use of the figure "The Merry Wanderer" as its trademark or logo, and membership fees for the M.I. Hummel Club in the United States.

Presently before the court is the Defendants' Motion for Summary Judgment (Docket No. 106) in which Goebel is seeking summary judgment on the grounds that the plaintiff's claims are time-barred and because Cambridge is collaterally estopped from claiming a co-ownership interest in the Renewal Copyright due to the doctrine of issue preclusion. For the reasons detailed herein, this court finds that Cambridge's claims are barred by the Copyright Act's three-year statute of limitations, and that, even assuming Cambridge had asserted a state law cause of action, these same claims would remain time-barred under Massachusetts law. This court also finds, however, that there are disputed facts relating to the issue preclusion claim. Accordingly, this court recommends to the District Judge to whom this case is assigned that the defendants' motion for summary judgment be ALLOWED on the grounds that the plaintiff's claims are untimely.

## II. STATEMENT OF FACTS [1]

The following material facts are undisputed unless otherwise indicated.

### Creation and Copyright of "Das Hummelbuch"

The facts giving rise to this litigation have occurred over the course of more than seventy years, and began with the drawings of Berta Hummel, a gifted artist who was born in Bavaria in 1909 and enrolled in the Academy of Applied Arts in Munich, Germany in 1927. (Defs.' Ex. A ¶ 6). At some point during her life, Berta Hummel began drawing pictures of children in rural settings wearing traditional German clothing. (*Id.*). In 1931, she joined the Convent of Siessen ("Convent"), a Congregation of Franciscan Sisters, and, after taking her vows, became Sister Maria Innocentia Hummel. (*Id.*). During or prior to 1934, Sister Hummel and the Convent had some of Sister Hummel's drawings published as postcards. (*Id.*; DF ¶ 1).

In May 1934, Emil Fink, the head of a German publishing company, Emil Fink Verlag ("Fink"), entered into an agreement with Sister Hummel and the Convent by which Fink became authorized to publish forty of Sister Hummel's drawings in a book entitled "Das Hummelbuch." (DF ¶ 3; Defs.' Ex. A–2). Thereafter, in November 1934, Fink entered into an agreement with Margarete Seemann ("Seemann"), an Austrian poet, pursuant to which Seemann agreed to provide an introduction

---

1. Subject to this court's separate order issued this date on Goebel's motions to strike three fact witness declarations submitted by Cambridge in support of its opposition to the motion for summary judgment, the facts are derived from the "Defendants' Concise Statement of Material Facts to Which There is No Genuine Dispute" ("DF") (Docket No. 108) and exhibits thereto ("Defs.' Ex. ——"), the plaintiff's filing entitled "Cambridge Contro- verts the Defendants' (Moving Parties) Concise Statement of Material Facts to Which There is No Genuine Dispute" ("PF") (Docket No. 119) and exhibits thereto ("Pl.'s Ex. ——"), and the "Plaintiff's Concise Statement of the Material Facts of Record, Relevant to Defendants' Motion, as to Which There Exists a Genuine Issue to be Tried" ("PDF") (Docket No. 118).

and poems for the book. (DF ¶ 3; Defs.' Ex. A–3). Fink published Das Hummelbuch in December 1934. (DF ¶ 4).

Goebel also entered into an agreement with Sister Hummel and the Convent, which the parties executed in November 1935. (DF ¶ 2; Defs.' Ex. A–1). Pursuant to the contract, Sister Hummel agreed to convey to Goebel the exclusive right to transform her drawings into figurines (the "Hummel figurines") in exchange for licensing fees.[2] (DF ¶ 2; Defs.' Ex. A–1). The parties dispute whether Goebel based its design and manufacture of Hummel figurines on copyrighted images contained in Das Hummelbuch or on postcards and drawings that predated publication of the book. (Am. Compl. ¶ 71; Defs.' Ex. A ¶ 5).

In 1936, Fink filed an application for copyright of Das Hummelbuch with the United States Copyright Office.[3] (DF ¶ 4). Fink stated in the application form that it was the copyright owner and that Berta Hummel and Margarete Seemann were the authors of the book. (Defs.' Ex. A–4). It is Seemann's copyright interest in Das Hummelbuch that gives rise to Cambridge's co-ownership claims in this action. Specifically, Cambridge alleges that Seemann was a joint author of the book (Am. Compl.¶ 35), and its claims depend upon a showing that Seemann, Fink, and Sister Hummel each had a separate ownership interest in the copyright and its renewal.

Seemann died in 1949, prior to the expiration of the initial term of the copyright in Das Hummelbuch. (DF ¶ 5; Am. Compl. ¶ 45). At that time, Seemann's interests, if any, reverted to her sister, Theresia Romanowicz, a resident of Vienna, Austria and Seemann's sole next of kin. (Am.Compl.¶ 46). Thirteen years after Seemann's death, in 1962, Fink applied to the United States Copyright Office for a Renewal Copyright in Das Hummelbuch. (DF ¶ 6). On the application, Fink identified itself as a "proprietor of copyright in a work made for hire." (Id.; Defs.' Ex. A–5). Cambridge disputes that Das Hummelbuch was a "work made for hire" under copyright law, and asserts instead that it was a joint work of joint authorship. (Am. Compl.¶¶ 33–40). Cambridge also alleges that when Fink obtained the Renewal Copyright, Theresia Romanowicz was entitled to a co-ownership interest in the Renewal Copyright even though she was not named in the registration. (Id. ¶ 46). Goebel disputes Cambridge's position, contending instead that Das Hummelbuch was a work made for hire under copyright law, and that all of the renewal rights vested in Fink alone. (See Defs.' Mem. at 19–20).

Theresia Romanowicz died in about 1970. (Am.Compl.¶ 50). Cambridge alleges that her daughter, Maria Romanowicz of Vienna, Austria,[4] and her niece, Dr. Alexandrine Cermanovic–Kuzmanovic of Belgrade, Yugoslavia, inherited her entire estate in equal halves. (Id. ¶ 50; Defs.' Ex. E at 126–29, 256–57). Therefore, Cambridge asserts, Ms. Romanowicz and Dr. Cermanovic–Kuzmanovic each obtained ownership interests in the Renewal Copyright. (Am.Compl.¶ 51).

---

**2.** Since 1935, Goebel has continued to manufacture and sell the Hummel figurines, which have proved popular with American collectors, sell for several hundred dollars apiece, and generate direct revenues from American sales that are alleged to be in the millions. *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co., Kg.*, 295 F.3d 59, 62 (1st Cir.2002).

**3.** The book was first published in English in 1951 under the name, "The Hummel Book." (Defs.' Ex. B ¶ 4).

**4.** Maria Romanowicz has a son, Father Sergius Romanowicz, who has provided evidence in this case.

In 1971, Fink assigned all of its interest in the Renewal Copyright to Goebel. (DF ¶ 7). Cambridge contends, and Goebel denies, that this assignment did not negate the ownership interests of Seemann's heirs, Ms. Romanowicz and Dr. Cermanovic–Kuzmanovic. (Am.Compl.¶ 70).

### Litigation Regarding Rights to the Renewal Copyright

Schmid Brothers, Inc. ("Schmid") was the distributor of Goebel's Hummel figurines in the United States. (DF ¶ 8). Schmid also claimed to be the assignee of Sister Hummel's sole legal heir, with all of the right, title, and interest in the works of art created by Sister Hummel. (Defs.' Ex. K–2 ¶¶ 4–5). For purposes of this litigation, there is no dispute between the parties regarding the chain of ownership originating from Sister Hummel's interests in the copyright of Das Hummelbuch.

Schmid and Goebel have a history of litigation against one another dating back to the late 1960s. (DF ¶ 8; PF ¶ 8). Henry Herrmann, Cambridge's sole shareholder and counsel in this action, has represented Schmid in a number of these lawsuits.[5] (DF ¶¶ 8, 15; PF ¶ 8). Attorney Herrmann also served as a director of Schmid for several years. (DF ¶ 8).

Of particular relevance to the instant litigation, in 1990 Schmid filed a lawsuit against Goebel in the United States District Court for the Eastern District of New York in which it claimed that Schmid and Goebel were co-proprietors in the Renewal Copyright of Das Hummelbuch (the "New York Litigation"). (DF ¶ 10; Defs.' Ex.

K–2 ¶¶ 10–15). In 1992, Attorney Herrmann, acting on behalf of Schmid, signed a Consent Judgment in that case, in which the parties to the litigation stated that they had "undivided one-half interests" in the Renewal Copyright. (Defs.' Ex. A–6 ¶ 3). The Consent Judgment was entered by the court on or about October 19, 1992. (Defs.' Ex. A–6). Notwithstanding the language of the Consent Judgment, Attorney Herrmann was aware that Seemann's heirs or next of kin might have grounds for asserting an interest in the Renewal Copyright. (DF ¶ 11). An issue in the instant litigation is whether Cambridge is estopped from asserting an ownership interest in the Renewal Copyright as a result of the 1990 litigation.

### Assignment of Rights to Cambridge

In 1995, Attorney Herrmann identified Seemann's heirs as Maria Romanowicz and Dr. Alexandrine Cermanovic–Kuzmanovic, and contacted them in order to obtain an assignment of their interests in the Renewal Copyright. (DF ¶ 13; Defs.' Ex. E at 66–68, 125–27, 256–57). At the time discussions took place between Attorney Herrmann and Seemann's heirs in August and September of 1995, it is undisputed that Ms. Romanowicz and Dr. Cermanovic–Kuzmanovic knew or should have known that they might have had an interest in the Renewal Copyright of Das Hummelbuch. (DF ¶ 14). At issue, however, is whether they knew or should have known that any entity had taken an adverse position to their interest.

---

**5.** In 1971, Schmid and Attorney Herrmann entered into a Contingent Fee Agreement, which provided, inter alia, that in exchange for his legal services, Attorney Herrmann would receive a portion of Schmid's revenues from the sale of Hummel figurines in the United States, and that he would be entitled to a fee in the event that Schmid sold or otherwise disposed of certain rights relating

to its Hummel business. (DF ¶ 9; Defs.' Ex. G). In 1993, Schmid filed for bankruptcy, and Attorney Herrmann made a claim based on the terms of the Contingent Fee Agreement and related agreements. (DF ¶ 12). In October 1994, Attorney Herrmann agreed to a settlement of $3,750,000 from Schmid in the bankruptcy. (Id.).

Attorney Herrmann formed Cambridge as a Massachusetts corporation in August 1995. (DF ¶ 15). Shortly thereafter, on September 6, 1995, Ms. Romanowicz assigned to Cambridge all of her "right, title and interest in and to any United States Copyright Renewals in any of the works authored and/or co-authored by Margarete Seeman[n], including, without limitation, the work 'Das Hummel–Buch'" as well as all claims she may have had against third parties "arising out of or related to their infringement, use, benefit, and/or profit of/ from the United States Copyright Renewals in any of said works assigned hereby." (Defs.Ex. F). Ms. Romanowicz identified herself in the assignment as the "heir of Theresia Romanowicz, the sister and next of kin of Margarete Seeman[n]." (Id.).[6] According to Goebel, Cambridge paid Ms. Romanowicz $18,000 in exchange for the assignment. (Defs.' Mem. at 12).

Following the 1995 assignment to Cambridge, Attorney Herrmann continued to negotiate with Dr. Cermanovic–Kuzmanovic's attorney for the purchase of Dr. Cermanovic–Kuzmanovic's interests in the Renewal Copyright. (Defs.' Ex. E at 261–65). On February 9, 1999, Dr. Cermanovic–Kuzmanovic assigned to Cambridge all of her "right, title and interest" in the Renewal Copyright, as well as any and all claims and causes of action that she may have had against third parties, including those relating to the "infringement, use, benefit, and/or profit" from the Renewal Copyright. (Defs.' Ex. R). Dr. Cermanovic–Kuzmanovic identified herself in the assignment document as "[t]he Co-owner of the above-referenced renewal copyrights, as heir of Theresia Romanowicz, the sister of Margarete Seeman[n], as the latter's next of kin." (Id.). According to

Goebel, Cambridge paid Dr. Cermanovic–Kuzmanovic 100,000 Austrian Schillings, or about $10,000, in exchange for the assignment. (Defs.' Mem. at 12).

Cambridge filed the instant action on February 24, 2000. (DF ¶ 18). Cambridge's claims are premised on its co-ownership of the Renewal Copyright based on its assignments from the Seemann heirs, while Goebel disputes that Cambridge has any such ownership interest. (DF ¶ 19). In particular, Goebel asserts that Das Hummelbuch was not a joint work, but a work for hire under applicable copyright law. (Id.; Defs.' Ex. A ¶ 8). It also contends that the Hummel figurines are not based on the drawings in the book, but rather are based on drawings in which the Seemann heirs had no interest. (Defs.' Ex. A ¶ 5). Cambridge, on the other hand, contends that the book is a joint work under copyright law, and that Seemann is its joint author. (Am.Compl.¶¶ 33–40). Furthermore, Cambridge contends that all the Hummel figurines are based on drawings in the book to which the Seemann heirs claim an interest. (Am.Compl.¶ 71). Cambridge's ability to establish its co-ownership rights in the Renewal Copyright is, therefore, the cornerstone of this litigation.

Additional factual details relevant to the court's analysis are described below.

## III. ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

---

6. According to the plaintiff, Ms. Romanowicz made a confirmatory assignment to Cam- bridge in 1999. (PF ¶¶ 16, 18).

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant ... would permit a rational fact finder to resolve the issue in favor of either party." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (internal citations omitted). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996) (internal citations and quotation omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *See id.* at 324, 106 S.Ct. at 2553. In evaluating motions for summary judgment, however, the court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." *Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir.2004) (internal citation omitted).

### B. *Statute of Limitations*

Goebel asserts that Cambridge's claims are barred by a three-year statute of limitations because they arise from and are preempted by the Copyright Act, are subject to the Copyright Act's three-year limitations period, and accrued, at the latest, in September 1995, more than three years before the plaintiff filed its initial complaint. Alternatively, Goebel argues that even if Cambridge's claims arise under Massachusetts law, they are governed by the state's three-year limitations period for tort claims. However, Cambridge argues that its claims arise under state law, are contractual in nature, and are governed by the six-year statute of limitations for contract actions, which does not bar its claims. Moreover, Cambridge argues that even if the Copyright Act governs this case, the Act's limitations provision does not apply, and the court still must look to state law for the appropriate statute of limitations. Finally, Cambridge argues that any three year statute of limitations either had not expired before suit was brought or was tolled.

For the reasons detailed herein, this court finds that Cambridge's claims are governed by the Copyright Act, including the Act's three-year statute of limitations, and that Cambridge's ownership claims are time-barred. Furthermore, this court concludes that even if state law arguably applied in this case, the result would be the same. Finally, this court finds that the statute of limitations has not been tolled.

### 1. *Application of the Copyright Act*

The Copyright Act provides in relevant part:

> all legal or equitable rights that are equivalent to any of the exclusive rights *within the general scope of copyright* as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright ... are governed exclusively by this title ... [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (emphasis added). "The referenced 'scope of copyright,' 17 U.S.C. § 106, 'affords a copyright owner the exclusive right to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the

work publicly; and (5) display the work publicly.'" *Weber v. Geffen Records, Inc.,* 63 F.Supp.2d 458, 462 (S.D.N.Y.1999) (quoting *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992)). "Section 301 of the Copyright Act broadly preempts state law claims," and "converts all state common or statutory law 'within the general scope of copyright' into federal law to be uniformly applied throughout the nation." *Ritchie v. Williams,* 395 F.3d 283, 285–86 (6th Cir.2005) (quoting 17 U.S.C. § 301(a)). *See also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 305 (2d Cir.2004) (Copyright Act "both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action."), *cert. denied,* 544 U.S. 949, 125 S.Ct. 1704, 161 L.Ed.2d 525 (2005). At issue is whether the instant case is "within the general scope of copyright," and, consequently, is governed by the Copyright Act. Goebel asserts that this action arises under and is therefore preempted by the Copyright Act. Cambridge, on the other hand, argues that this is simply an action for an accounting or a constructive trust, and that the Copyright Act does not provide for such a cause of action. This court concludes that the Copyright Act controls.

### The Applicable Standard

■ The question whether a claim "arises under" the Copyright Act generally arises in the context of whether the federal court can exercise subject matter jurisdiction over a claim. *See* 28 U.S.C. § 1331 (district courts shall have original jurisdiction "of all civil actions arising under" the laws of the United States); 28 U.S.C. § 1338(a) (district courts shall have original jurisdiction "of any civil action arising under any Act of Congress relating to ... copyrights"). *See also Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1, 2 (1st Cir. 1987); *Merchant v. Levy,* 92 F.3d 51, 55

(2d Cir.1996), *cert. denied,* 519 U.S. 1108, 117 S.Ct. 943, 136 L.Ed.2d 833 (1997). The most frequently cited test for determining whether a cause of action "arises under" federal copyright law for jurisdictional purposes was formulated by the Second Circuit in *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). *See Royal,* 833 F.2d at 2. It provides:

> an action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction, 17 U.S.C. § 101, or asserts a claim requiring construction of the Act ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.

*T.B. Harms,* 339 F.2d at 828 (internal citation omitted). Both parties rely on this standard. Goebel asserts that Cambridge's claims are preempted because they require construction of the Act, while Cambridge counters that its complaint does not satisfy any of the criteria set forth in *T.B. Harms.*

■ Since subject matter jurisdiction is not an issue in this case, the more appropriate, though closely related, standard is that applied to the issue whether the claims being asserted have been preempted by copyright law. Many courts, including cases cited by Goebel in its briefs, apply what is commonly referred to as the "extra element test" to determine whether state claims are preempted. *See Diamond v. Gillis,* 357 F.Supp.2d 1003, 1008 (E.D.Mich.2005) ("[i]n determining whether the Copyright Act preempts a cause of action under state law, the Court must employ the 'extra element test' adopted by

many circuits"). Under this standard, state claims are preempted if the type of work involved may be protected by the Copyright Act (which is not in dispute here) and "the state created right" is "equivalent to one of the exclusive rights created by the Copyright Act." *Data Gen. Corp. v. Grumman Sys. Support Corp.,* 795 F.Supp. 501, 505 (D.Mass.1992), aff'd, 36 F.3d 1147 (1st Cir.1994). Thus, if the state claim "seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law" and does "not include any extra elements that make it qualitatively different from a copyright infringement claim," there is preemption. *Briarpatch,* 373 F.3d at 305. *See also Alvarez Guedes v. Marcano Martinez,* 131 F.Supp.2d 272, 279 (D.P.R.2001) ("To avoid preemption, a cause of action defined by state law must incorporate elements beyond those necessary to prove copyright infringement, and must regulate conduct qualitatively different from the conduct governed by federal copyright law." (internal quotations and citation omitted)). "The crux of the inquiry is whether the claimed state created right is qualitatively similar enough to the right protected by federal law to be termed 'equivalent' to, and thus preempted by, the federal law." *Data General,* 795 F.Supp. at 505.

■ In the instant case, whether applying the "arising under" test of *T.B. Harms*

or the "qualitatively equivalent" standard used in preemption cases, the result is the same. Cambridge's claims of ownership and right to compensation require construction of the Copyright Act and, therefore, arise under the Act. The rights asserted entitling Cambridge to payment for use are the rights protected by copyright law. Consequently, as detailed below, the three year statute of limitations of the Copyright Act is applicable to this case.

### The Plaintiff's Claims

Cambridge's ability to prevail in this action is dependent upon a showing that it has part ownership in the Renewal Copyright. *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co., Kg.,* 295 F.3d 59, 64–65 (1st Cir. 2002) (no matter how its cause of action is characterized, "the gist of Cambridge's claim" requires it to show "that it has part ownership in the U.S. renewal copyright, that [Goebel's] profits were derived from the use of the copyright in the U.S., and that Cambridge's share was wrongfully withheld by [Goebel].").[7] This requires Cambridge to establish not only that it obtained valid assignments from Seemann's legal heirs, but also that Seemann's contribution to Das Hummelbuch gave her rights as a co-owner of the Renewal Copyright. This, in turn, is dependent upon whether Das Hummelbuch is a "joint work" or a "work made for hire."[8] The

---

7. The First Circuit ruling in this case was rendered as a result of Cambridge's appeal of the District Court's ruling on the defendants' motion to dismiss for lack of personal jurisdiction.

8. Records from the United States Copyright Office are not sufficient to prove that Seemann was a joint owner of Das Hummelbuch. A certificate of copyright registration only provides prima facie evidence of the facts contained in the registration, which may be rebutted by other evidence. *Estate of Burne*

*Hogarth v. Edgar Rice Burroughs, Inc.,* 342 F.3d 149, 165–67 (2d Cir.2003). Therefore, although Fink identified Seemann as one of the authors of Das Hummelbuch in its application for the original copyright, that evidence does not conclusively establish Seemann's ownership interest, especially in light of evidence showing that in its application for the Renewal Copyright, Fink stated that it was a "proprietor of copyright in a work made for hire." (Defs.' Exs. A–4 and A–5; DF ¶ 6).

resolution of all of these issues will require interpretation and application of the Copyright Act. *See Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 156–58 (2d Cir.2003) (analyzing "works made for hire" and entitlement to copyright interests in the renewal term under Copyright Act), *cert. denied*, 541 U.S. 937, 124 S.Ct. 1660, 158 L.Ed.2d 357 (2004).

Under the law of this circuit, "[i]t is settled beyond peradventure that an action does not 'arise under' the federal copyright laws merely because it relates to a product that is the subject of a copyright." *Royal*, 833 F.2d at 2. It is equally well-established that disputes as to copyright ownership that arise under an agreement between the parties must be resolved under state contract law. *See id.* at 4–5 (no federal jurisdiction over claim seeking declaratory judgment that plaintiff was a co-owner of a copyright and an accounting for profits where plaintiff's assertions stemmed from his purported contract rights). However, the First Circuit has not directly addressed the question of whether a claim of copyright ownership which is not premised on a separate agreement between the parties arises under or is preempted by the Copyright Act.[9]

Courts that have addressed the issue in the context of subject matter jurisdiction analyses have determined that claims involving the validity of a copyright interest which is not premised on the parties' contractual agreement, constitute federal copyright claims. "Unlike a case where a dispute as to copyright ownership arises under an agreement between the parties, resolution of which depends on state contract law, copyright ownership by reason of one's status as a co-author of a joint work arises directly from the terms of the Copyright Act itself." *Merchant*, 92 F.3d at 55 (internal citation omitted). Thus, where, as here, a party's status as co-owner "cannot be answered without reference to the Copyright Act," the claim "arises under the Act." *Gaiman v. McFarlane*, 360 F.3d 644, 652–53 (7th Cir.2004). *Accord Lieberman v. Estate of Chayefsky*, 535 F.Supp. 90, 91–92 n. 4 (S.D.N.Y.1982) (where resolution of the "central issue in this case," namely whether the plaintiff is a co-author entitled to an accounting, depends on whether the material is a "joint work" under the Copyright Act, the court has subject matter jurisdiction under the Act; the case is "distinguishable from cases in which a copyright ownership claim arises from an assignment of a copyright, a transaction governed by contract law."); *see also Philadelphia Orchestra Assoc. v. Walt Disney Co.*, 821 F.Supp. 341, 347–48 & n. 7 (E.D.Pa.1993) (the Copyright Act of 1909, which governs ownership of copyrights for works created before January 1, 1978, "and the cases decided thereunder will control the definitions of 'Work Made for Hire' and 'Joint Authorship' since these doctrines determine who holds the copyright").

Similarly, courts addressing preemption issues have concluded that claims for an accounting or compensation due to a plaintiff's status as a co-owner are preempted

---

9. This court recognizes that in its ruling on personal jurisdiction in this case, the First Circuit expressed doubt that Cambridge has asserted any federal cause of action in this matter. *Cambridge Literary Props.*, 295 F.3d at 63 ("it is unlikely that any federal cause of action is asserted, even though federal law is the source of the Hummel Book copyright itself."). However, the question of preemp- tion was not before the court, and the court neither conducted an analysis of the issue nor rendered a decision on the matter. Furthermore, this issue was not as fully developed by the parties as it is now. Finally, the First Circuit did recognize that federal copyright law would be relevant to the issues raised in the complaint. *See, e.g., id.* at 64 n. 4.

by the Copyright Act as they are equivalent to the claims protected by the Copyright Act. As the court held in *Weber* in language applicable to the instant case:

> Regardless of the title of each cause of action, plaintiff's basic claim is that because he is a co-author of the copyrighted material and a co-owner of the copyrights, defendants' copyrights should not entitle them to the full bundle of privileges that attach to copyright ownership. It is only through this basic claim that any enrichment is unjust, that any competition is unfair, or that anyone profiting must account to plaintiff. Accordingly, the Copyright Act preempts plaintiff's three state law claims: accounting, unfair competition, and unjust enrichment.

*Weber,* 63 F.Supp.2d at 463. *See also Diamond,* 357 F.Supp.2d at 1009 (state law cause of action preempted by Copyright Act where it is based on plaintiff's basic claim that because he is a co-author of copyrighted material and co-owner of the copyrights, anyone profiting must account to him).[10]

In sum, whether applying the jurisdictional "arising under" test or the "extra element" preemption test, Cambridge's claims are governed by the Copyright Act.

### The Well–Pleaded Complaint Rule

■ Cambridge argues that under the well-pleaded complaint rule, the court's determination as to whether the plaintiff has stated a state or federal cause of action must be based only on the allegations set forth in Cambridge's complaint and not on issues raised by Goebel in defense of the claims. Cambridge further contends that since its Amended Complaint, on its face, asserts a claim for an accounting between co-owners, it cannot be construed as a federal copyright claim. These arguments are not persuasive.

The "well-pleaded complaint" rule usually is used to determine whether a case "arises under" federal law for purposes of subject matter jurisdiction. *See Aetna Health, Inc. v. Davila,* 542 U.S. 200, 207, 124 S.Ct. 2488, 2494, 159 L.Ed.2d 312 (2004).[11] It provides "that the presence or absence of a claim arising under a federal statute ordinarily is determined from the face of the complaint—and from its corollaries, that the plaintiff is the master of its complaint and that federal question jurisdiction is not properly invoked on the basis of a federal defense to a state law claim." *DeCarlo v. Archie Comic Publ'ns, Inc.,* 127 F.Supp.2d 497, 502 (S.D.N.Y.2001), *aff'd,* 11 Fed.Appx. 26 (2d Cir.2001), *cert. denied,* 534 U.S. 1056, 122 S.Ct. 647, 151 L.Ed.2d 564 (2001). Therefore, under the rule, "a

---

**10.** Cambridge claims that when an accounting or other relief is claimed as a result of or incidental to an infringement claim, copyright law applies, while when the accounting is based on co-ownership, state law applies. (Plaintiff's Memorandum in Support of its Opposition to Defendants Rule 56 Motion for Summary Judgment ("Pl.'s Mem.") (Docket No. 125) at 8–11). This argument misses the mark. Contrary to Cambridge's contention, the critical issue is not whether a party is seeking relief due to a claim of infringement as opposed to its status as a co-owner, but rather whether the basis for ownership is premised on a contractual relationship or federal copyright law. *See Gaiman,* 360 F.3d at

652–53 (fact that suit is not a claim of infringement does not preclude application of Copyright Act).

**11.** Since there is diversity jurisdiction in the instant case, it is not clear that the well-pleaded complaint rule has any application here. The parties have cited no cases indicating that the rule can be used as a weapon to preclude the application of controlling law where the court has subject matter jurisdiction on another basis. Since, however, the parties address the rule, this court will discuss the relevant arguments.

defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Aetna Health,* 542 U.S. at 207, 124 S.Ct. at 2494 (alteration and emphasis in original) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983)).

Cambridge's reliance on the well-pleaded complaint rule to defeat the application of federal copyright law to its claims must fail for several reasons. First, Cambridge "overlooks the fact that a plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by use of 'artful pleading.' If a plaintiff has pled what must necessarily be a federal claim, he has no state law available to choose as the basis for his suit." *DeCarlo,* 127 F.Supp.2d at 503 (internal punctuation and citations omitted). By simply refusing to address the federal basis for its complaint, Cambridge does not make the Copyright Act go away.

Moreover, there is an exception to the well-pleaded complaint rule, which provides:

> [W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed. This is so because [w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.

*Aetna Health,* 542 U.S. at 207–08, 124 S.Ct. at 2494–95 (alterations in original) (internal quotations and citations omitted). The Copyright Act fits within the exception. *See Briarpatch,* 373 F.3d at 305; *Ritchie,* 395 F.3d at 286–87.

Finally, even assuming that the well-pleaded complaint rule applies here, Cambridge's Amended Complaint still would arise under the Copyright Act. The Amended Complaint, on its face, reveals that the threshold issues in this case are whether Das Hummelbuch was a joint work in which Seemann was a joint author, whether Seemann's heirs obtained valid interests in the Renewal Copyright, and whether their assignments to Cambridge transferred valid ownership interests, and that the answers to these questions are governed by the Copyright Act. For example, Cambridge alleges that Das Hummelbuch "constitutes a joint work of joint authorship, with Seeman[n] a joint author thereof," and that at the time Fink obtained the Renewal Copyright, Seemann's sole surviving next of kin was "entitled to share in the 1962 renewal of the Book copyright as a co-owner of the renewal ... even though she was not named in the renewal registration." (Am.Compl.¶¶ 33, 46). Furthermore, Cambridge alleges that "Fink validly renewed the United States copyright in the Book on June 8, 1962[.]" (*Id.* ¶ 41). Fink's June 8, 1962 copyright application shows that Fink was making a claim as a "proprietor of copyright in a work made for hire." (Defs.' Ex. A–5). Thus, Cambridge's allegations set forth in the Amended Complaint raise the same issues requiring interpretation and application of the Copyright Act as discussed above. Therefore, the well-pleaded complaint rule does not alter this court's conclusion that the Copyright Act governs this action.

## 2. *The Applicable Statute of Limitations*

■ Pursuant to the Copyright Act, "[c]ivil actions seeking copyright remedies are barred unless 'commenced within three years after the claim accrued.'" *Estate of Burne Hogarth,* 342 F.3d at 163 (quoting

17 U.S.C. § 507(b)). Goebel asserts that because Cambridge's claims are preempted by the Copyright Act, the Act's three-year statute of limitations is controlling. In contrast, Cambridge argues that even if the Copyright Act governs the case, the statute of limitations for its accounting and constructive trust claims must be based on state law. This court finds that the Copyright Act's limitations period applies to the plaintiff's claims.

In support of its argument, Cambridge relies on the Fifth Circuit decision in *Goodman v. Lee*. In that case, the court had held that there was exclusive original jurisdiction over the action because the plaintiff's "request for a declaratory judgment to establish co-authorship under the Copyright Act necessitated the application and interpretation of the copyright ownership provisions of the Act[,]" namely, the provisions defining a joint work and providing that "joint authors of a work are co-owners of a copyright in the work." *Goodman*, 78 F.3d 1007, 1011 (5th Cir.1996) (describing its earlier decision regarding subject matter jurisdiction), *cert. denied*, 519 U.S. 861, 117 S.Ct. 166, 136 L.Ed.2d 108 (1996). Nevertheless, following a jury verdict establishing that the plaintiff was a joint author and therefore a co-owner of a copyright under the Copyright Act, the court determined that the plaintiff's claim for an accounting was "governed in all respects by state law." *Id.* at 1012. In particular, the court found that the accounting claim was governed by the state statute of limitations rather than the statute of limitations set forth in section 507(b) of the Copyright Act. *Id.* at 1013. The court reasoned that the Copyright Act "provides that '[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued'" but that "this case does not present an action that is 'maintained under the provisions' of the

Copyright Act" because the Act's provisions do not "detail any action available to a co-owner for an accounting." *Id.* (quoting 17 U.S.C. § 507(b)). Therefore, the court concluded, "even though the case requires an interpretation of the Copyright Act's definition of a joint work—thereby compelling the assumption of federal jurisdiction—the action is not being *maintained* under the provisions of the Copyright Act: There are no provisions in the Act establishing or governing such an action." *Id.* (emphasis in original).

*Goodman* is at odds with the weight of authority. Courts including the Second, Sixth and Ninth Circuits have ruled that state law claims that are preempted by the Copyright Act or dependent upon a copyright claim are controlled by the Copyright Act's three-year statute of limitations. *See, e.g., Merchant*, 92 F.3d at 56 (claims for a declaration of copyright ownership rights and an accounting of profits are time-barred three years after accrual); *Ritchie*, 395 F.3d at 289 (state law claims preempted by Copyright Act are properly recharacterized as copyright claims and subject to the Act's three-year statute of limitations); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir.1996) (Copyright Act's three-year statute of limitations barred claim for declaration of co-ownership, as well as subsidiary remedy for an accounting, which was dependent upon that claim), *cert. denied*, 519 U.S. 1090, 117 S.Ct. 763, 136 L.Ed.2d 710 (1997); *Johnson v. Berry*, 228 F.Supp.2d 1071, 1077 (E.D.Mo.2002) (where "plaintiff's claim of co-ownership of copyright is barred as untimely, the derivative claim to an accounting of profits as a co-owner is also barred."); *Weber*, 63 F.Supp.2d at 464 ("duty to account for profits presupposes a relationship as co-owners of the copyright" and "plaintiff cannot state a claim with any non-copyright cause of action that depends on a

copyright claim that would be time-barred under the Copyright Act."). This court finds these decisions persuasive. Indeed, "[i]t would be anomalous to hold that plaintiffs are precluded from seeking a declaration of co-authorship and, at the same time, that they are permitted to claim a breach of the duties that co-authorship might impose." *Johnson*, 228 F.Supp.2d at 1077 (quoting *Margo v. Weiss*, No. 96 Civ. 3842(MBM), 1998 WL 2558, at *9 (S.D.N.Y. Jan.5, 1998)). It follows that Cambridge cannot avoid the three-year statute of limitations by asserting only state claims that are contingent upon a finding of co-ownership. Therefore, this court finds that the Copyright Act's statute of limitations is applicable to Cambridge's action.

### 3. *Accrual of Claims*

Cambridge filed the instant litigation on February 24, 2000. Accordingly, in order to avoid the statute of limitations, Cambridge's claims must not have accrued prior to February 24, 1997. For the reasons stated below, this court finds that Cambridge's co-ownership claims are barred by the statute of limitations.

■■■■ "[T]he copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights[.]" *Gaiman*, 360 F.3d at 653. *See also Merchant*, 92 F.3d at 56 ("A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised."). Thus, "a claim inconsistent with the copyright holder's interest sets the statute run-

ning[.]" *Gaiman*, 360 F.3d at 653. Where the claim involved is one of co-ownership, the limitations period "begins to run whenever there is a 'plain and express repudiation' of ownership by one party as against the other." *Ritchie*, 395 F.3d at 288 n. 5; *Gaiman*, 360 F.3d at 653; *Zuill*, 80 F.3d at 1371.[12]

■■■ A copyright owner must be "reasonably diligent." *See Johnson*, 228 F.Supp.2d at 1073 ("A cause of action accrues when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.") (quoting *Netzer v. Continuity Graphic Assoc., Inc.*, 963 F.Supp. 1308, 1315 (S.D.N.Y.1997)). Thus, under the Copyright Act, "[a]s in all statute of limitations inquiries, accrual will be later than the date of violation only to the extent that plaintiff exercised reasonable diligence but remained unaware of the violation." *Weber*, 63 F.Supp.2d at 464.

The record is clear that the 1995 Consent Judgment, signed by Goebel and Attorney Herrmann as counsel for Schmid to end the New York Litigation, constituted an express repudiation of any ownership interests that the Seemann heirs may have had in the Renewal Copyright. Thus, the Consent Judgment provided that Schmid and Goebel/ARS AG[13] shall have no duty to account to each other for their past or future use of or profit from "their respective undivided one-half interests in the United States renewal copyright" in Das Hummelbuch. (Defs.' Ex. A–6 at 2–3). This action was clearly inconsistent with

---

12. Cambridge has cited *Robinson v. Robinson*, 173 Mass. 233, 53 N.E. 854 (1899), for when the statute of limitations begins to run in a suit between co-owners of land. However, the cases discussed above, which deal specifically with accrual of claims under copyright law, are more directly on point.

13. As part of the settlement of the New York Litigation, Goebel purchased shares in Ars AG and Ars AG entered into a licensing agreement with Schmid by which Ars AG obtained a license to make two-dimensional Hummel products such as ornamental plates. (Defs.' Ex. L ¶ 7; Defs.' Ex. M).

the Seemann heirs' ownership interest (if any) in the Renewal Copyright.

█ The record is equally clear that claims derived from Ms. Romanowicz accrued no later than September 6, 1995, the date she assigned her claims to Cambridge. (*See* Pl.'s Mem. (Docket No. 125) at 23 ("There is no need to waste discussion about the year involved, since Cambridge has *admitted* that Ms. Romanowicz's accounting claim accrued on September 6, 1995.")). Attorney Herrmann is counsel to and the sole shareholder of Cambridge. (DF ¶ 15). Consequently, when Cambridge obtained the assignment from Ms. Romanowicz, Cambridge knew or should have known of Goebel's earlier repudiation of those ownership rights in the Renewal Copyright. Thus, the statute of limitations pertaining to Cambridge's claims of ownership based on the assignment of rights from Ms. Romanowicz began to run in 1995, and, unless there is equitable tolling, discussed *infra*, those claims are now time-barred.

With respect to the ownership claims that arose from the assignment of Dr. Cermanovic–Kuzmanovic's rights to Cambridge, Cambridge could not have acted upon its knowledge of Goebel's repudiation until after February 9, 1999, the date of the assignment. Nevertheless, Goebel argues that the statute of limitations began to run on these claims in 1995, when Dr. Cermanovic–Kuzmanovic learned of her putative rights in the Renewal Copyright. Cambridge, as the assignee of Dr. Cermanovic–Kuzmanovic, "cannot maintain a claim in the face of a limitations defense that would have trumped the same claim had it been brought by the assignor." *Young v. Lepone,* 305 F.3d 1, 17 (1st Cir. 2002). Cambridge argues, however, that none of the evidence presented establishes that in 1995, or at any other time prior to the filing of this lawsuit, Dr. Cermanovic–Kuzmanovic had knowledge of Goebel's repudiation of her ownership rights in the Renewal Copyright or of any other facts that would have led her to believe that Goebel was depriving her of those rights. Although he admits negotiating with Dr. Cermanovic–Kuzmanovic and her attorney in 1995 regarding Cambridge's desire to purchase her interest in the Renewal Copyright, Attorney Herrmann denies revealing to them that Schmid (through Attorney Herrmann) and Goebel had repudiated any co-ownership interest that Dr. Cermanovic–Kuzmanovic may have had as a Seemann heir. Attorney Herrmann contends that his company, Cambridge, may benefit from his silence and the statute of limitations does not begin to run until 1999, when Dr. Cermanovic–Kuzmanovic eventually assigned her claims to Cambridge. This argument fails because Dr. Cermanovic–Kuzmanovic should have exercised due diligence in 1995, when first approached by Mr. Herrmann, and determined the status of her claim.

The evidence before this court is that Mr. Herrmann contacted Dr. Petter of Vienna, counsel for Dr. Cermanovic–Kuzmanovic, in 1995. (Defs.' Ex. E (Herrmann Dep.) at 257–60). Counsel authorized Mr. Herrmann to communicate directly with Dr. Cermanovic–Kuzmanovic, Theresia Romanowicz's niece, in Belgrade. (*Id.* at 257). Mr. Herrmann did so in 1995, and he testified that Dr. Cermanovic–Kuzmanovic told him:

[t]hat she was the niece of the late Theresia Romanowicz, that she knew of her—Margarete Seemann's works, that she had—*she was very interested in gaining some income based upon an assignment of her American rights,* but she also said that she needed to be very careful, and specifically referred me back to her counsel in Vienna. . . .

(*Id.* at 257 (emphasis added)). Her counsel was Dr. Petter, and, after his death, his daughter, Dr. Fechter–Petter. (*Id.* at 259–62).

Mr. Herrmann then contacted Dr. Petter. (*Id.* at 259–60). Mr. Herrmann testified about that conversation as follows:

> I think the substance was that he *was interested in furthering, if possible, the arrangement we were talking about, because he told me his client was living in very modest circumstances at the time in Belgrade;* but he said that was complicated due to factors he didn't want to discuss at the time involving his client, not me, and that he wanted some time, so to speak; but basically he said let's keep this option open, but we can't do it right now, but let's talk again fairly soon.

(*Id.* at 260 (emphasis added)). Dr. Petter died after this conversation, but Mr. Herrmann continued his discussions with Dr. Petter's office and then, in 1996, with Dr. Fechter–Petter. (*Id.* at 261–62). Apparently, the assignment to Cambridge was not consummated until 1999 because it was not until then that Dr. Cermanovic–Kuzmanovic was comfortable publicly admitting to a sale of foreign rights to a foreign entity due to the political climate in Belgrade. (*Id.* at 262–64).

During the negotiations over the price Cambridge was willing to pay for the assignment, Mr. Herrmann testified that he did discuss with Dr. Fechter–Petter, as he had done with the Romanowicz heirs in 1995, that, in substance, the price he was willing to pay was affected in part by some uncertainties in the validity of the interests in the renewal copyrights. (*Id.* at 264–65).[14] The date of this conversation is unclear from the record. (*Id.*). There is also evidence that, once this litigation was commenced, Mr. Herrmann spoke with Dr. Cermanovic–Kuzmanovic's lawyer about Goebel's assertion that the ownership claims had been stale for decades and were barred by the statute of limitations. (*Id.* at 265–71). While the assignment to Cambridge is of "any and all of my legal and/or equitable monetary claims and causes of action I may have under American laws as of the date hereof for payments, damages, profits, and/or accountings against third parties arising out of or related to their infringement, use, benefit, and/or profit of/from the United States Copyright Renewals in any of said works assigned hereby" (Defs.' Ex. R), Mr. Herrmann denies explaining the substance of those claims during negotiations.

Since, according to Attorney Herrmann, his conversations with Dr. Cermanovic–Kuzmanovic and her attorneys were similar to those held with Ms. Romanowicz, the testimony regarding those earlier conversations are relevant. Attorney Herrmann attests in his affidavit that he never disclosed to Maria Romanowicz or her son, Father Sergius Romanowicz—or their counsel—prior to this litigation:

> (a) That either Goebel or Goebel Art had ever exploited, and/or benefitted/profited from, the United States Renewal Copyright in the 1934 Book Das Hummelbuch (the "Book Renewal").
>
> (b) That the Romanowicz Heirs had, or might have, a claim for an accounting against Goebel and/or Goebel Art for their exploitation/benefit/profit referred to in (a) above . . . .

(Herrmann Aff. (Pl.Ex.2) ¶ 13). Similarly, it was not until this litigation that Attorney Herrmann told the Romanowiczes that

---

14. Since Mr. Herrmann contends that these rights are worth millions of dollars, *see* note 2 *supra,* and he only paid Dr. Cermanovic–Kuz-manovic about $10,000 (Defs.' Mem. at 12), he presumably explained that only significant litigation would establish the rights.

their claims might be barred by the statute of limitations. (*Id.* ¶ 13(c)).

The record is amazingly barren as to what Attorney Herrmann did tell the Romanowiczes while he was negotiating the price he was willing to pay for all of their rights and claims. Nevertheless, it is clear that there were negotiations during which the heirs would have had the opportunity to question Attorney Herrmann about the scope of their rights, the status of payments, the existence of any claims they might have, and the like. Presumably, Mr. Herrmann would have answered any such inquiries truthfully, and told them what he believed to be true by no later than 1995—namely, that Goebel had asserted interests adverse to those of the heirs.[15]

Similarly, the 1995 and 1996 discussions with Dr. Cermanovic–Kuzmanovic and her counsel apparently addressed Dr. Cermanovic–Kuzmanovic's desire to obtain income from Seemann's work. There was ample opportunity for Dr. Cermanovic–Kuzmanovic or her counsel to make the most basic inquiries of Mr. Herrmann regarding the status of her ownership interests. Again, Mr. Herrmann presumably would have answered such inquiries truthfully and revealed the fact that Goebel and Schmid had acted in a manner inconsistent with any ownership interest by the Seemann heirs. Since any "reasonably diligent person" in Dr. Cermanovic–Kuzmanovic's position would have made inquiry of Attorney Herrmann, Dr. Cermanovic–Kuzmanovic "should have been aware" of the adverse positions taken by Goebel and Schmid in 1995. *Weber*, 63 F.Supp.2d at 465. Under such circumstances, the three year statute of limitations in the Copyright Act bars Cambridge's cause of action based on the assignment from Dr. Cermanovic–Kuzmanovic, unless the statute is tolled.

### 4. Statute of Limitations Under State Law

■ Even if the plaintiff's claims were in fact state law claims, this court would reach the same result with respect to Goebel's statute of limitations argument. In reaching this conclusion, this court finds that if the plaintiff's claims constitute state law causes of action, they should be construed as tort claims, as Goebel asserts, rather than contract claims, as Cambridge contends. Massachusetts tort claims are governed by a three-year statute of limitations instead of the six-year limitations period applicable to contract claims. *Compare* Mass. Gen. Laws ch. 260, § 2 *with* Mass. Gen. Laws ch. 260, § 2A.

Under Massachusetts law, the question of whether a claim sounds in contract or tort depends upon the nature and essence of the claim. *See Barber v. Fox*, 36 Mass. App.Ct. 525, 529, 632 N.E.2d 1246, 1249 (1994) (applying contract period of limitations to tort claims where the "gist of the action" was contractual). Here, Cambridge's claims are not based on a contractual relationship between the parties, such as a failure to pay royalties under the terms of an agreement, but instead seek a division of profits from Goebel's exploitation of a copyrighted work based on "equitable doctrines relating [to] unjust enrichment and general principles of co-ownership." *Zuill*, 80 F.3d at 1369 (applying three year copyright statute of limitations to claim of co-owners for profits). In particular, Cambridge alleges that its "accounting claim is based on well settled

---

**15.** Since Mr. Herrmann admits that the statute of limitations began to run no later than September 6, 1995, when the Romanowicz heirs granted Cambridge their assignment, it is undisputed that Cambridge had sufficient information as of that date for the statute of limitations to accrue.

equity precedents," that the defendants "have failed in their duties in equity" by failing to account to the Seemann heirs, and that the defendants "have unjustly enriched themselves." (Amend. Compl.¶¶ 101, 105, 106). However, nowhere in its Amended Complaint does Cambridge allege the existence of any contract setting forth the terms of Goebel's obligations to its co-owners. *Compare Royal*, 833 F.2d at 4 (suit seeking declaration of copyright co-ownership and an accounting of profits was really an action to recover royalties due under an express royalty agreement). Rather, even if the court were to ignore the fact that Cambridge's entitlement to relief is dependent on its status as a co-owner under the Copyright Act, Cambridge would be left with a claim that, due to its unilateral exploitation of the Renewal Copyright, Goebel, "as in any other case of conversion or misappropriation ... would have to account to the other joint owner for the latter's share of the profits." *Gaiman*, 360 F.3d at 652. Such a tort action would be governed by a three-year statute of limitations.

Similarly, if the claims are deemed to be ones for unjust enrichment, the tort statute of limitations would apply. "In Massachusetts the statutes of limitation applicable to law actions based on contract and tort are also applicable to suits in equity."[16] *Desmond v. Moffie*, 375 F.2d 742, 743 (1st Cir.1967). "The court must look to the 'gist of the action' or the essential nature of the plaintiff's claim in determining what statute of limitations to apply." *Palandjian v. Pahlavi*, 614 F.Supp. 1569, 1577 (D.Mass.1985). Where, as here, the unjust enrichment claim is premised on an alleged conversion, and not on a breach of contract, the tort statute of limitations applies. *See Epstein v. C.R. Bard, Inc.*, No. Civ.A. 03–12297–RWZ, 2004 WL 1598912, at *3 (D.Mass. July 19, 2004) (where the complaint for unlawful use of trade secrets "makes no mention of any contract," tort statute of limitations applies to unjust enrichment claim); *Palandjian*, 614 F.Supp. at 1577 (where gist of unjust enrichment claim arises from breach of contract allegations, six-year statute of limitations applies).

Ordinarily, a tort claim accrues under Massachusetts law at the time of the plaintiff's injury. *Tagliente v. Himmer*, 949 F.2d 1, 4 (1st Cir.1991). However, where the factual basis for the cause of action is " 'inherently unknowable' at the time of the injury[,]" the statute of limitations will be tolled and the action will not accrue until the time "when the injured party knew or, in the exercise of reasonable diligence, should have known, the factual basis for the cause of action." *Id.* at 4 (emphasis omitted). Assuming, without deciding, that this "discovery rule" is applicable to the instant case, for the reasons detailed above, the statute of limitations began to run in 1995. By then either the plaintiff had actual knowledge of the injury or Dr. Cermanovic–Kuzmanovic, in the exercise of reasonable diligence, should have known the relevant facts.[17] Therefore,

---

**16.** To the extent that Cambridge is seeking an imposition of a constructive trust, that is a remedy that the court may award to prevent unjust enrichment, it is not a cause of action. *See Feinman v. Lombardo*, 214 B.R. 260, 266 (D.Mass.1997) ("Absent an underlying cause of action for fraud or other misconduct by the defendants, the Trustee's constructive trust claim is not viable because, standing alone, it is not an independent cause of action.") Similarly, an "accounting" is a "traditional equity remedy[.]" *In re Evangelist*, 760 F.2d 27, 29 (1st Cir.1985), and cases cited. Since Cambridge's underlying claims are tort based, these equitable remedies are governed by the tort statute of limitations.

**17.** Cambridge argues that even if the heirs had made "minimal inquiry" of Goebel, Goe-

even if the Copyright Act's statute of limitations does not apply, the plaintiff's claims, nevertheless, are time-barred.

### 5. *Tolling of the Limitations Period*

Cambridge argues that even if the statute of limitations operates as a bar to its claims, the limitations period should be tolled on two separate grounds. First, Cambridge claims that it was prevented from using or disclosing its knowledge of Goebel's exploitation of the Renewal Copyright due to a protective order governing documents produced in a 1977 lawsuit, and that it was unable to obtain such evidence from an alternative source until 1999, when it obtained the evidence from a former officer of the defendants. Therefore, according to Cambridge, it was prevented by law from filing its action earlier. (Pl.'s Mem. at 31–36). Second, Cambridge argues that the statute of limitations should be equitably tolled because defendant Goebel Art fraudulently concealed its ownership interest in the Renewal Copyright by posting a false and misleading copyright notice on its website. (*Id.* at 36–39). This court concludes that these arguments are without merit, and that Cambridge has not established that tolling of the limitations period is warranted.

### *The Secret Documents*

 Cambridge's counsel, Mr. Herrmann, was one of the attorneys of record for Schmid in a 1977 lawsuit Schmid brought against Goebel. *See Schmid Bros., Inc. v. W. Goebel Porzellanfabrik KG.*, 589 F.Supp. 497 (E.D.N.Y.1984). Therein, Schmid established that it had copyright renewal rights in two plaques

and three figurines due to the co-authorship status of Sister Berta Hummel. *Id.* at 498, 505. According to Cambridge, during the course of the litigation, Goebel produced "voluminous correspondence" between Goebel and Sister Berta Hummel from the period 1934–46. (Pl.'s Mem. at 33). This correspondence, Cambridge contends, "clearly establishes that Goebel used the illustrations in *Das Hummelbuch* as the basis for many of its figurines, including its trademark 'Merry Wanderer' figurine," and would help establish the claims Cambridge is asserting in the instant litigation. (*Id.* at 33–34). However, the documents were produced under the designation "SECRET" in accordance with a Protective Order issued in that case. (*Id.*). According to Cambridge, no suit for an accounting could have been brought on anyone's behalf "if the complaint relied in whole or in part on the information in the letters marked "SECRET." Had [Mr. Herrmann] done so, he would have been in clear violation of that Protective Order." (*Id.* at 34–35).

There is no evidence in the record that any steps were taken to change the designation of the documents or to seek to obtain the same information in the 1977 litigation from other sources, such as depositions or letter rogatories. Rather, Mr. Herrmann asserts that in 1999 he "spoke to Mr. Ludwig Schneider (the former chief executive of both Defendants), and persuaded him to disclose, in general terms, the Defendant's highly profitable exploitation of the Book Renewal[.]" (Pl.'s Mem. at 35). At that point, Mr. Herrmann felt

---

bel would not "have revealed the truth" that the Hummel figurines were derived from the book and thus that the Seemann heirs were entitled to royalties. (*See* Pl.'s Mem. at 28). Goebel agrees that it would not have revealed these facts since they are not true. (Defs.' Reply Mem. at 17). In any event, this is the

wrong inquiry. The heirs were in the position in 1995 to make inquiry of Mr. Herrmann about their entitlement to any payments and/or the status of their interests. Presumably, Attorney Herrmann would have disclosed at least what he believed to be the truth.

he was able to bring the instant action for an accounting, "which he did as expeditiously as possible, on February 25, 2000. . . ." (*Id.*). Thereafter, on March 10, 2004, the District Judge in the instant case endorsed Cambridge's proposed order providing for partial relief of the Brooklyn Protective Order and allowing the use of the documents. (Docket No. 78; Docket Entry dated 3/10/04).

Accepting all of Cambridge's allegations as true, it still has not stated a basis for tolling of the statute of limitations. As an initial matter, the record does not establish that Mr. Herrmann was in any way prevented from obtaining the facts from sources other than the documents. Moreover, there is nothing that prevents a party from commencing an action based on a good faith belief in its position, without having proof of all the facts in hand. Mr. Herrmann could have commenced a timely action in 1995, and then sought discovery, including the release from the protective order, at that time. Cambridge has failed to establish that it was prevented from filing suit by force of law.

### Fraudulent Concealment

Equally without merit is Cambridge's claim that Goebel Art fraudulently concealed its ownership interest in the Renewal Copyright from 1994 on by having W. Goebel Porzellanfabrik identified as the copyright owner of "The Merry Wanderer" on a webpage instead of Goebel Art, and, as a result, the defendants are estopped from asserting a statute of limitations defense. (*See* Pl.'s Mem. at 36–39). Thus, the argument goes, "[t]he false copyright notice concealed Goebel Art's tenancy-in-common in the Book Renewal, and effectively precluded the filing of an accounting claim against Goebel Art, because Cambridge Counsel [Mr. Herrmann] relied on this false copyright notice." (*Id.* at 39). Consequently, Goebel Art should be "equi-

tably estopped from raising a statute of limitations defense as to any claims for an accounting based on its post 1994 income from licensing (by ARS) of material protected by the Book Renewal" and Goebel should be estopped as well because of its connivance with Goebel Art. (*Id.* & n. 40). Finally, Cambridge asserts, without support, that "[a]ny relevant limitations which would otherwise have run in that time period were tolled until the filing of this action in February of 2000." (*Id.* at 39).

Under the doctrine of fraudulent concealment, tolling of the statute of limitations may be warranted where the defendant "engaged in fraud or deliberate concealment of material facts relating to his wrongdoing" and the plaintiff consequently "failed to discover these facts within the normal limitations period despite his exercise of due diligence." *Torres Ramirez v. Bermudez Garcia*, 898 F.2d 224, 229 (1st Cir.1990) (internal quotations and citation omitted).

 It is well established in the First Circuit that

[t]o invoke the doctrine of fraudulent concealment, a plaintiff must plead and prove three elements: '(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.'

*Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir.1984) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975)), *cert. denied,* 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985). Similarly, under state law, "[i]n the absence of a fiduciary duty of full disclosure," the limitations period will not be tolled under the Massachusetts fraudulent concealment statute, Mass. Gen. Laws

ch. 260, § 12,[18] "unless the defendant(s) concealed the existence of a cause of action through some affirmative act done with intent to deceive" and the plaintiff was unaware of the facts creating the cause of action. *White v. Peabody Constr. Co., Inc.*, 386 Mass. 121, 133, 434 N.E.2d 1015, 1022 (1982).[19] Cambridge has not satisfied these requirements.

■ As an initial matter, Cambridge has not put forth any facts which establish that it exercised due diligence or provide the reasons it failed to discover Goebel Art's ownership interest during the limitations period. Nor does Cambridge explain why it failed to bring suit against the Goebel entity it believed was holding itself out as the copyright owner. Most significantly, however, Cambridge has not presented facts establishing that Goebel Art's use of the wrong copyright notice on its website was intended to conceal its ownership interest in the Renewal Copyright from the public or from any potential claimants. Absent any evidence of the defendants' wrongful state of mind, Cambridge has not proven that the three-year statute of limitations should be tolled. *See Berkson*, 743 F.2d at 56 (tolling not available where there was no charge of affirmative conduct intended to conceal the facts upon which the plaintiff based his complaint or to deceive the plaintiff into believing that he had no cause of action); *White*, 386 Mass. at 133, 434 N.E.2d at 1022 (plaintiff must show defendant acted "with intent to deceive").

For all these reasons, this court finds that tolling is not appropriate, and that the plaintiff's claims are barred by the statute of limitations. Consequently, the defendants' motion for summary judgment should be allowed.

### C. Issue Preclusion

Goebel also argues that Cambridge is barred by collateral estoppel from seeking to establish its co-ownership interest in the Renewal Copyright. Specifically, Goebel contends that the issue of ownership was finally determined in the New York Litigation. Mr. Herrmann was counsel of record for Schmid in that litigation, which was concluded in 1992 by the entry of a Consent Judgment stating that Schmid and Goebel had "undivided one-half interests" in the Renewal Copyright. The Consent Judgment was signed by Mr. Herrmann as Schmid's counsel. Goebel argues that because Attorney Herrmann was a privy to Schmid in the earlier action and is the sole shareholder and counsel to the plaintiff in the present action, Cambridge should be precluded from relitigating the ownership question here. (Defs.' Mem. at 30). Because there is a genuine dispute as to whether Attorney Herrmann exercised sufficient control over Schmid to satisfy the requirement that the parties to the current and prior actions be closely identified, this court finds that Goebel is not entitled to summary judgment on the basis of collateral estoppel.

18. Mass. Gen. Laws ch. 260, § 12 states that "[i]f a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."

19. Cambridge has not established that Goebel has a fiduciary duty of disclosure arising from any fiduciary relationship with Cambridge or as a result of any co-ownership interest that Cambridge may have in the Renewal Copyright. *See Margo v. Weiss*, No. 96 Civ 3842(MBM), 1998 WL 2558, at *9 (S.D.N.Y. Jan. 5, 1998), *aff'd*, 213 F.3d 55 (2d Cir.2000) ("The only duty that exists between co-authors is the duty to account for profits.").

### 1. *The Relevant Standard*

"The principle of collateral estoppel, or issue preclusion, bars relitigation of any factual or legal issue that was *actually* decided in previous litigation between the parties, whether on the same or a different claim." *Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 30 (1st Cir.1994) (emphasis in original) (internal quotation omitted). The doctrine of issue preclusion is applicable where the following five elements are present:

> 1. the determination ... must be over an issue which was actually litigated in the first forum; 2. that determination must result in a valid and final judgment; 3. the determination must be essential to the judgment which is rendered by, and in, the first forum; 4. the issue before the second forum must be the same as the one in the first forum; and 5. the parties in the second action must be the same as those in the first.

*Nat'l Labor Relations Bd. v. Donna–Lee Sportswear Co., Inc.,* 836 F.2d 31, 34 (1st Cir.1987). *See also Grella,* 42 F.3d at 30. The sole issue in dispute is whether the fifth element has been satisfied.

The parties to the New York Litigation and the parties to the present action clearly are not the same. Although Goebel has been a party to both actions, Cambridge was not a party and had not even been formed when the New York Litigation was taking place. However, there is an exception to the rule that issue preclusion affects only the named parties to the litigation. As the First Circuit has stated,

> [t]he traditional exception to the rule that issue preclusion affects only the parties to the initial litigation has been the understanding that the privies of those parties are also bound. Numerous courts have recognized that while privity is an elusive concept, the privity which can lead to issue preclusion is that relationship between two parties which is sufficiently close so as to bind them both to an initial determination, at which only one of them was present.

*Donna–Lee Sportswear,* 836 F.2d at 34 (internal quotations and citations omitted). Thus, if Attorney Herrmann is a privy to Cambridge and was a privy to Schmid in the earlier litigation, Cambridge may be bound by the earlier determination that Schmid and Goebel had "undivided one-half interests" in the Renewal Copyright.

In the present case, it is clear that there is privity between Cambridge and Attorney Herrmann and that their interests are closely identified. Attorney Herrmann is the person who identified the Seemann heirs and negotiated for the assignments of their interests in the Renewal Copyright to Cambridge. (Defs.' Ex. E at 66–68, 125–27). He caused Cambridge to be formed in 1995, and has been the sole shareholder of Cambridge since that time. (DF ¶ 15). Additionally, Attorney Herrmann is special counsel to Cambridge and is acting as its attorney in this litigation. (*Id.*). Attorney Herrmann, as the sole shareholder, has a personal stake in the outcome of this litigation, and is able to assert substantial control over Cambridge's litigation strategy. "[O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record." *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). Therefore, there is privity between Attorney Herrmann and Cambridge

in this matter.[20]

However, this court cannot find, based on the present record, that Attorney Herrmann was in privity with Schmid in the earlier litigation. There are disputed facts as to whether Attorney Herrmann had sufficient control over the New York Litigation other than simply as a trusted lawyer to justify the application of issue preclusion.

"A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." Restatement (Second) of Judgments § 39, *cited with approval in Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 758 (1st Cir.1994). The rationale behind this principle is as follows:

> A person who assumes control of litigation on behalf on [sic] another has the opportunity to present proofs and argument on the issues litigated. Given this opportunity, he has had his day in court and should be concluded by the result. Such an assumption of control is often motivated by a direct interest the controlling party has in the litigation because its outcome will affect his rights or obligations to the person on behalf of whom he participates or against whom the litigation is conducted. It is not necessary, however, that the controlling party have a proprietary or financial interest in the outcome of the litigation. Although the existence of such an interest is circumstantial evidence that control has been assumed, its absence does not prevent a finding of control on the basis of other circumstances. The motive of the person assuming control may be that he, or someone else whose interests he wishes to protect, is situated similarly to the party to the action and he is in effect making the litigation a test case of the issues with which he is concerned. The fact of his assumption of control of the litigation is itself indicative that his interest is substantially equivalent to that of the party on whose behalf he appears.

Restatement (Second) of Judgments § 39, comment a. *See also Gonzalez*, 27 F.3d at 758 ("If a nonparty either participated vicariously in the original litigation by exercising control over a named party or had the opportunity to exert such control, then the nonparty effectively enjoyed his day in court, and it is appropriate to impute to him the legal attributes of party status for purposes of claim preclusion.").

Moreover, of significance to the instant case, is that "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." *Id.* at § 36(2). Consequently, "[a] person who undertakes to control litigation on behalf of another is affected only in the capacity in which he does so." *Id.* at § 39(e). For example, "a person controlling an action in his individual capacity is not bound when in later litigation he appears in his capacity as a representative for another" and vice versa. *Id.*

In the instant case, the parties fail to distinguish the "control" Mr. Herrmann may have had simply as counsel for Schmid, from the "control" Mr. Herrmann may have had over the corporate entity such that his personal interests would have been "substantially equivalent to that of the party on whose behalf he appears."

**20.** Cambridge's argument that Goebel cannot pierce the corporate veil is inapplicable to the question of privity for purposes of issue preclusion. Goebel has not asked the court to disregard the corporate form, only to bind Cambridge and its privy (Mr. Herrmann) to what it contends was an earlier adjudication of the ownership issue.

*Id.* at 39, comment a. *See also Kreager v. Gen. Elec. Co.*, 497 F.2d 468, 471–72 (2d Cir.1974), *cited in Gonzalez*, 27 F.3d at 759 (substantial control found by owner of a close corporation who assumes control over litigation brought against the firm). However, both areas of inquiry raise disputed issues of material fact warranting the denial of the motion for summary judgment on issue preclusion grounds.

As an initial matter, Goebel argues, in support of its contention that Attorney Herrmann controlled the New York Litigation, that Attorney Herrmann signed the complaints, drafted the settlement documents, and developed the theories advanced in that case. (Defs.' Mem. at 35–37). Mr. Herrmann also signed the Consent Judgment on behalf of Schmid, and the relevant language, which was included in the final Judgment, that Schmid and Goebel each had a one-half interest in the Renewal Copyright, was included in drafts disseminated by Mr. Herrmann. (Defs.' Reply Mem. at 23; Defs.' Ex. L at ¶ 14).[21] In addition, Goebel has presented an affidavit in which its attorney from the New York Litigation states that Attorney Herrmann was involved with Schmid for decades and made all of the substantive decisions in the New York Litigation. (Defs.' Ex. L ¶ 17).

However, the evidence presented by Cambridge conflicts with Goebel's account of Attorney Herrmann's role in that action. Specifically, Cambridge has submitted evidence showing that in 1991, Schmid hired an intellectual property law firm to act as counsel, along with Attorney Herrmann, in the New York Litigation. (Pl.'s Ex. 3 ¶ 4). It further shows that Attorney Herrmann's responsibilities for the case progressively decreased, and by the Spring of 1992, he was relieved of all responsibility for the negotiation and drafting of the settlement documents relating to the dispute concerning Das Hummelbuch. (*Id.* ¶¶ 8, 9, 11; Pl.'s Ex. 2 ¶¶ 14, 17–19).

Thus, viewing the facts in the light most favorable to Cambridge, there is a dispute as to the amount of control Mr. Herrmann had over the New York Litigation. Most importantly, however, this dispute concerns his role as counsel and does not address whether he should be bound by these actions in his personal capacity. The fact that Mr. Herrmann in his role as Schmid's lawyer had control over litigation is insufficient to establish that Mr. Herrmann should be bound in his individual capacity.

Goebel also argues that Mr. Herrmann had a "special relationship" with Schmid, which provided him with a percentage of revenues from the sale of Hummel products in exchange for his services. (*See* Defs.' Mem. at 33–34). Such an arrangement, Goebel argues, far exceeded the normal contingent fee agreement and gave Mr. Herrmann a substantial financial interest in the New York Litigation so as to require a finding of privity. (*See* Defs.'

21. While Mr. Herrmann contends that he did not agree with this language, he apparently represented to the court that it was true by, at a minimum, signing the Consent Judgment as counsel for Schmid. This may raise the issue of judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (internal citation omitted). However, the parties have not addressed the issue of judicial estoppel, and Mr. Herrmann's relationship with Schmid would need to be such that he was bound by representations to the court made on behalf of Schmid rather than on behalf of Mr. Herrmann personally. Consequently, this issue will not be addressed further herein.

Mem. at 37–38); Defs.' Ex. G (1971 Contingent Fee Agreement between Attorney Herrmann and Schmid), Ex. H (1990 Confirmatory Amendment to Contingent Fee Agreement), and Ex. I (1994 Motion to Approve Compromise of Controversies (Henry Herrmann) filed in Schmid bankruptcy proceeding). For his part, Mr. Herrmann disputes that the Contingent Fee Agreement applied to his role in the New York Litigation. (*See* Pl.'s Ex. 2 ¶ 25). At this juncture, there are many unanswered questions as to the effect of this complex financial arrangement on Mr. Herrmann's role with Schmid. Consequently, this court recommends that Goebel's motion for summary judgment be denied to the extent that it is based on the doctrine of issue preclusion.

### IV. *CONCLUSION*

For the reasons set forth above, this court concludes that Cambridge's claims are barred by the statute of limitations. Accordingly, this court recommends to the District Judge to whom this case is assigned that the Defendants' Motion for Summary Judgment (Docket No. 106) be ALLOWED.[22]

March 14, 2006.

---

**22.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See*

*Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).